1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MOGINRUBIN LLP**
Daniel J. Mogin (SBN No.  95624)
Timothy Z. LaComb (SBN 314244)
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone:    (619) 687-6611
Facsimile:    (619) 687-6610
dmogin@moginrubin.com
tlacomb@moginrubin.com

**DON BIVENS PLLC**
Don Bivens (*pro hac vice forthcoming*)
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone:    (602) 708-1450
don@donbivens.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS,<br><br>       Plaintiff,<br><br>       vs.<br><br>EATING RECOVERY CENTER LLC,<br><br>       Defendant. | Case No:<br><br>**COMPLAINT FOR:**<br><br>(1) Violation California Invasion of Privacy Act, § 631<br>(2) Violation of California's Confidentiality of Medical Information Act, § 56.10(a)<br>(3) Violation of California's Confidentiality of Medical Information Act, § 56.10(d)<br>(4) Unjust Enrichment<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jane Doe brings this class action complaint on behalf of herself and all others similarly situated (the "Class Members") against Eating Recovery Center LLC ("ERC"). The allegations contained herein are based on Plaintiff's personal knowledge of facts pertaining to herself and upon information and belief, including further investigation conducted by Plaintiff's counsel:

## I.      SUMMARY OF THE CASE

1.      This is a class action lawsuit brought on behalf of all California citizens who had their personal communications and/or medical information unlawfully shared with, disclosed to or intercepted by Meta Platforms Inc. ("Meta") due to ERC imbedding the Meta Pixel on its websites.

2.      There are few pieces of information more personal, sensitive, and valuable than a person's medical information. This is particularly true when medical information pertains to subjects like eating disorders or mental disorders. As a result, such information is vigorously protected by state and federal laws.

3.      ERC is a health care provider offering virtual and in-person treatment for eating disorders and mental disorders. Through its websites, users can access, schedule, or learn about these services and do things like take diagnostic quizzes or research symptoms, conditions, and treatment through the internal search bar.

4.      When conducting many of these actions, users communicate private and medical information to ERC and reasonably assume ERC protects this information. Not only is ERC legally obligated to protect this information, but it also assures users their information is "100% confidential" and states in its Privacy Policy that it will "NEVER share or sell" users' personal information with third parties.[1]

5.      Unfortunately, this is false. Unbeknownst to users, ERC has imbedded the Meta Pixel on its websites, which is a snippet of code that enables Meta to intercept communications between users and ERC in real time. As a result, when users submit personal and/or medical

---

[1] https://www.eatingrecoverycenter.com/; https://www.eatingrecoverycenter.com/privacy-policy.

information on ERC's websites, the Pixel transmits this information to Meta. This information includes: (i) the medical treatment users are receiving or considering; (ii) answers to diagnostic quizzes; (iii) locations where users are obtaining or considering receiving treatment, which indicates medical conditions and types of treatment; (iv) support groups for which users register, which indicates medical conditions and types and location of treatment; and (v) all information entered into the websites' internal search bar, which can indicate medical conditions and types of treatment. Meta can use information intercepted by the Pixel, provided by ERC, and/or already possessed by Meta to match the private and medical information to specific individuals.

6.     The transmission of information through the Pixel is instantaneous. Meta often receives the information even before ERC. The existence of the Pixel and transmission of information is intentionally invisible and occurs without obtaining consent by ERC users.

7.     ERC engages in this unlawful disclosure of data for pecuniary reasons. In exchange for the information sent to Meta through the Pixel, ERC receives analytics and other information from Meta that enables it to more effectively advertise its services, increasing revenue as a result.

8.     Through these unlawful actions, ERC has violated California's Invasion of Privacy Act, § 631; has violated California's Confidentiality of Medical Information Act, §§ 56.10(a) and (d); and has been unjustly enriched. These violations have harmed Plaintiff and Class Members, and Plaintiff seeks to remedy these harms through this action. Plaintiff seeks statutory damages, compensatory damages, punitive damages, and injunctive relief to enjoin ongoing unlawful data disclosures.

## II.     JURISDICTION AND VENUE

9.     The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because the amount in controversy for the Class exceeds $5,000,000, exclusive of interest and costs, there are more than 100 putative Class Members (defined below), and minimal diversity exists because a significant portion of putative Class Members are citizens of a state different than ERC.

10.     The Court has personal jurisdiction over ERC because ERC transacts substantial business in this District and has conducted systematic and continuous activities in California, including operating two clinics in California. ERC has also engaged in purposeful conduct targeted at California and its residents and there is a substantial nexus between that conduct and the claims asserted herein that makes the exercise of jurisdiction over ERC reasonable.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d) because ERC transacts business in this District and a substantial portion of the events giving rise to the claims alleged herein occurred in this District.

### III.     PARTIES

12.     Plaintiff Jane Doe is a resident of California. Plaintiff provided private and medical information to ERC that was intercepted by Meta via the Pixel. On ERC's websites, Plaintiff has (i) taken multiple diagnostic quizzes, (ii) filled out forms with information concerning her diagnosis and condition, (iii) scheduled follow-up calls with ERC, which reveal condition and treatment, (iv) scheduled clinical assessments, which reveal condition and treatment, and (v) researched several topics using the internal search bar, including: residential programs, locations, treatment levels, and insurance coverage. Plaintiff has, and at all relevant times had, a Facebook account.

13.     Defendant ERC is an international center for eating disorders and recovery, as well as for mood, anxiety, and trauma-related disorders. ERC's principal place of business is in Denver, Colorado. It has thirty-five centers in the US, including two in California. It also offers virtual services for thousands of California residents. ERC employs roughly 1,400 individuals and generates roughly $280 million in annual revenue.

14.     The acts alleged to have been done by ERC were authorized, ordered, or performed by their directors, officers, managers, agents, employees, or representatives in the course of their employment and while actively engaged in the management of ERC's affairs.

15.     ERC, through its subsidiaries, divisions, affiliates and agents, operated as a single unified entity with each acting as the agent or joint-venturer of or for the others with

respect to the acts, violations, and common course of conduct alleged herein and under the authority and apparent authority of parent entities, principals and controlling parties.

## IV.   CLASS ACTION ALLEGATIONS

16.   Plaintiff brings this action on behalf of herself and as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the members of the following Class:

> All persons who reside in California and whose medical or private information or communications were obtained by, shared with, or disclosed to Meta during the Class Period as a result of using ERC's websites (the "Class").

> Specifically excluded from the Class are Defendant and its officers, directors or employees; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant. Also excluded from the Class are any attorneys appearing in this matter, any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his or her immediate family and judicial staff, and any juror assigned to this action.

17.   The Class Period is the full extent of the applicable limitations period, including any tolling or other equitable considerations that extend the limitations period.

18.   Class Identity/Ascertainability: The Class is readily identifiable and is one for which records should exist.

19.   Numerosity: Class Members are so numerous and geographically dispersed that joinder is impracticable. Tens of thousands of California residents had their medical or private information or communications obtained by, shared with, or disclosed to Meta because of using an ERC website.

20.   Typicality: Plaintiff's claims are typical of the claims of Class Members because Plaintiff had her private and medical information and communications obtained by, shared with, and disclosed to Meta because of using ERC's website.

21.   Defendant has acted in a manner that applies generally to Plaintiff and all Class Members. Each Class Member has been similarly impacted by Defendant's failure to comply

with California law concerning the dissemination and protection of communications and medical information.

22.    <u>Commonality</u>:   There are questions of law and fact common to the Class, including, but not limited to:

(a)    whether Defendant violated § 631 of CIPA by aiding, agreeing with, and conspiring with Meta to disclose, share with, or permit Meta to collect Class Members' communications made while using ERC's website;

(b)    whether Defendant violated § 56.10(a) or (d) of the CMIA by disclosing or sharing Class Members' medical information with Meta;

(c)    whether Defendant was unjustly enriched by disclosing, sharing with, or permitting the collection of Class Members' communications and medical information with Meta to increase advertising effectiveness;

(d)    whether Defendant constitutes a "provider of health care" as used in § 56.10 of the CMIA;

(e)    whether Class Members' communications with ERC were obtained by Meta while in transit;

(f)    whether ERC obtained consent from Class Members to share, disclose or permit the collection of communications and medical information made while using ERC's websites; and

(g)    whether the Pixel is a "machine, instrument, or contrivance" as the term is used by § 631 of CIPA.

23.    <u>Predominance</u>: The above-listed questions of law and fact common to all Class Members predominate over questions that may affect individual Class Members.

24.    <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Class and Plaintiff has retained counsel competent and experienced in the prosecution of class actions and complex data privacy cases to represent herself and the Class.

25.    Superiority and Manageability: A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class Members is impracticable. The individual prosecution of separate actions by individuals would lead to repetitive adjudication of common questions and fact and law and create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant.  There will be no difficulty in the management of this action as a Class action.

## V.    FACTUAL ALLEGATIONS

**A.    Background**

26.    Meta is one of the largest companies in the world and generates a vast majority of its revenue from selling advertising on its websites and providing advertising services to third parties. Meta's advertising superiority largely stems from the vast amount of personal data it collects. Meta collects this information when people use its apps, like Facebook, and when people use third-party apps and websites.

27.    One way in which Meta collects information when people use third-party websites is by offering the website operators "Business Tools" that "help website owners and publishers, app developers and business partners, including advertisers and others, integrate with Meta, understand and measure their products and services, and better reach and serve people who might be interested in their products and services."[2]

28.    In exchange for the Business Tools, Meta requires website operators to provide it with data concerning their users. Website operators can either provide this information manually or allow Meta to collect it through code placed on the websites.

29.    One such piece of code is the Pixel, which website operators can integrate into their websites. The Pixel "tracks the people and type of actions they take."[3] When a user accesses a website with the Pixel and takes certain actions on that website, the Pixel directs the user's browser to send a separate message to Meta's servers. Meta's code initiates this message

---

[2] https://www.facebook.com/help/adsmanagerbuiltin/331509497253087.

[3] https://www.facebook.com/business/goals/retargeting.

simultaneously as the actions and communications on the website take place. The actions that trigger the Pixel include clicking on a page, inputting information, using a search bar, adding something to a cart, scrolling on the page, or providing answers to questions.

30.     The Pixel transmission to Meta includes, by default, data about the page that was being viewed when the event was triggered and the IP address of the browser. The transmission can also include far more detailed information about the user, including full names, email addresses, phone numbers, birthdays, mailing addresses, and other unique information provided to websites.

31.     When health care providers place the Pixel on their websites, the information they permit Meta to collect often includes protected medical information, including information concerning the user's diagnosis, condition, or treatment.

32.     Typical internet users cannot detect whether the Pixel is present on a given website. The Pixel's existence is intentionally invisible to the naked eye and is not apparent from commonly visible website data. To detect the presence of the Pixel, users must use special tools or software typically reserved for web developers. And even if users can detect the presence of the Pixel, they cannot determine which information it is collecting and sending to Meta without understanding the coding terms, hashed values, and specialized abbreviations unique to the Pixel. Thus, the Pixel allows Meta to be a silent third party watching whatever users are doing on certain websites.

33.     Both Meta and website operators benefit financially from the Pixel. Meta offers the Pixel to website operators as an analytics and advertising tool that operators use to increase advertising effectiveness and revenue. According to Meta, the Pixel "can help you better understand the effectiveness of your advertising and the actions people take on your site" and "log[s] when someone takes an action on your website."[4]

///

///

---

[4] https://www.facebook.com/business/tools/meta-pixel; https://www.facebook.com/business/help/742478679120153?id=1205376682832142.

COMPLAINT

34.     In exchange for helping website operators with the effectiveness of their advertising, Meta receives data regarding the website's users. Meta uses this information to increase the value of its ad space and ad services.

**B.     ERC Violates CIPA and the CMIA through its use of the Pixel**

35.     ERC's website permits users to do several things. From links on just the home page, users can sign up for support groups, schedule assessments, and learn about various eating disorders and mood, anxiety, or trauma-related disorders. Users can also take self-assessment quizzes to determine condition and necessary treatment. And users can research symptoms, conditions, and treatments through the internal search bars on ERC's website.

36.     Unbeknownst to users, and despite claiming near the top of the home page that information is "100% Confidential," ERC unlawfully shares much of this information with Meta without users' consent via the Pixel. The information ERC sends to Meta includes: (i) medical treatment users are seeking; (ii) answers to diagnostic quizzes, which reveals symptoms and conditions; (iii) locations where users are seeking treatment, which indicates the type of treatment users are seeking; (iv) the support groups for which users register, which discloses medical conditions; (v) users' scheduling of appointments through the site, which discloses conditions and treatment; and (vi) content entered into the websites' internal search bar, which can disclose medical condition, symptoms, and/or treatment.

37.     ERC also shares information that ensures Meta can connect the medical information to specific individuals, including users' IP addresses associated with their browser and Facebook IDs ("FID"). An FID uniquely identifies an individual's Facebook user account. Anyone who possesses a person's FID can use this identifier to quickly and easily locate, access, and view the corresponding Facebook profile.

38.     The following diagram shows the information intercepted by the Pixel when a person with a Facebook account searches "eating disorder" on ERC's internal search bar, which includes the search terms and the user's FID:

///

///

:authority: www.facebook.com

:method: GET

:path: /tr/?id=878621089183024&ev=Microdata&dl=https%3A%2F%2Fwww.eatingrecoverycenter.com%2Fsearch%3Fkeyword%3Deating%2520disorder&rl=https%3A%2F%2Fwww.eatingrecoverycenter.com%2Finsurance&if=false&ts=1676824623114&cd[DataLayer]=%5B%5D&cd[Meta]=%7B%22title%22%3A%22Eating%20Recovery%20Center%22%2C%22meta%3Adescription%22%3A%22Browse%20our%20site%20for%20physician%20and%20leadership%20bios%2C%20resources%2C%20locations%2C%20care%20options%2C%20and%20more.%20Eating%20Recovery%20Center%20is%20here%20to%20assist%20in%20any%20way%20we%20can.%22%7D&cd[OpenGraph]=%7B%22og%3Asite_name%22%3A%22Eating%20Recovery%20Center%22%2C%22og%3Aurl%22%3A%22https%3A%2F%2Fwww.eatingrecoverycenter.com%2Fsearch%22%2C%22og%3Atitle%22%3A%22search%20%7C%20Eating%20Recovery%20Center%22%2C%22og%3Adescription%22%3A%22Browse%20our%20site%20for%20physician%20and%20leadership%20bios%2C%20resources%2C%20locations%2C%20care%20options%2C%20and%20more.%20Eating%20Recovery%20Center%20is%20here%20to%20assist%20in%20any%20way%20we%20can.%22%7D&cd[Schema.org]=%5B%5D&cd[JSON-LD]=%5B%5D&sw=1920&sh=1080&v=2.9.96&r=stable&a=tmgoogletagmanager&ec=1&o=30&fbp=fb.1.1676466470419.1328682039&it=1676824622517&coo=false&es=automatic&tm=3&rqm=GET

:scheme: https

accept: image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8

accept-encoding: gzip, deflate, br

accept-language: en-US,en;q=0.9,he-IL;q=0.8,he;q=0.7

cookie: sb=hpKyY0Wa_S1cjRXq3BIpij=u; datr=P-S-Y0mVQQMMYyU5uouVeImI; c_user=100075943█████2 xs=12%3AJaykUFgVCGi7YA%3A2%3A167345467O%3A3A-1%3A3AAcWQF7D8aiCE1J3_apOAZrKANMhvCPJ7ipjToq6bFQ; fr=0mEbC9Ubieton8u9f.AWUPyy4bi9vRIO4k8Pa_bdSZuCw.Bj65yO.2_.AAA.0.0.Bj65yO.AWUYgCpfDFE

referer: https://www.eatingrecoverycenter.com/

sec-ch-ua: "Chromium";v="110", "Not A(Brand";v="24", "Google Chrome";v="110"

sec-ch-ua-mobile: ?0

39.    Even for non-Facebook users, the Pixel discloses information that enables Meta to connect the private and medical information to specific individuals. This information includes: names, addresses, phone numbers, device identifiers, URLs, IP addresses, and other information.

40.    The following are representative examples demonstrating how users interact with ERC's websites and how that information is sent to Meta via the Pixel.

41.    First, upon entering the homepage of eatingrecoverycenter.com, users can hover on the "Conditions" tab and select a particular condition in order to explore treatment options. After selecting a condition, users are given an option to take a self-assessment quiz. Once a user submits an answer, many of which contain private and/or medical information, the answer is automatically sent to Meta.

42.    For example, ERC's "Compulsive Overeating" quiz asks users how often they "experience distress around my eating, including guilt, shame, or regret." The question looks like this:

///

///

///

43. Once the user answers the question, its answer is sent to Meta via the Pixel. For Facebook users, the information submitted includes their FID. The following diagram shows the information sent to Meta for someone who answers "Often" to the above question:



44. Every answer that a user provides is submitted to Meta in this manner.

45. Once a user completes the quiz, ERC provides users the option to schedule an assessment if their quiz results suggest they may have a condition for which ERC provides services.

COMPLAINT



46.     If a user clicks to schedule an assessment with ERC, then that information is also shared with Meta. For example, the following diagram involves a user that clicked to schedule an assessment after taking the compulsive overeating quiz:

```
id: 909314106089721
ev: SubscribedButtonClick
dl: https://www.eatingrecoverycenter.com/conditions/compulsive-overeating/quiz#start-quiz
rl: https://www.eatingrecoverycenter.com/conditions/compulsive-overeating
if: false
ts: 1676540452148
cd[buttonFeatures]: {"classList":"","destination":"https://www.eatingrecoverycenter.com/form/sel
f-assessment-form","id":"","imageUrl":"","innerText":"Schedule an Assessment","numChildButton
s":0,"tag":"a","type":null,"name":""}
cd[buttonText]: Schedule an Assessment
cd[formFeatures]: []
cd[pageFeatures]: {"title": "Why Do I Overeat? Compulsive Overeating Quiz | Eating Recovery Cente
r"}
sw: 1920
sh: 1080
v: 2.9.95
r: stable
a: tmgoogletagmanager
ec: 17
o: 30
cs_est: true
fbp: fb.1.1676466470419.1328682039
it: 1676538614046
coo: false
es: automatic
tm: 3
exp: c1
rqm: GET
```

id: 909314106089721

ev: Subscribe ButtonClick

dl: https://www.eatingrecoverycenter.com/conditions/compulsive-overeating/quiz#start-qui
z

rl: https://www.eatingrecoverycenter.com/conditions/compulsive-overeating

if: false

ts: 1676551415330

cd[buttonFeatures]: {"classList":"cta-btn","destination":"tel:877-825-8584","id":"","imageU
rl":"","innerText":"877-825-8584","numChildButtons":0,"tag":"a","type":null,"name":""}

cd[buttonText]: 0-0-0

cd[formFeatures]: []

cd[pageFeatures]: {"title":"Why Do I Overeat? Compulsive Overeating Quiz | Eating Recovery
Center"}

sw: 1920

sh: 1080

v: 2.9.95

47.     As the above demonstrates, anyone reviewing this information would know the
user (i) took the compulsive eating quiz, (ii) obtained results that suggested scheduling an
assessment to discuss the results because they indicated the user could have a compulsive eating
disorder, and (iii) called to schedule an assessment concerning compulsive eating.

48.     ERC also shares information concerning users' searches for and calls to
treatment centers with Meta. ERC allows users to search treatment centers by location. Once a
user identifies the treatment center it will use, ERC provides the option to call and schedule an
appointment with the center. The user's search for the treatment center and clicks to call and
schedule an appointment are shared with Meta in the following manner, which involves a user
that searched for centers in California and called a center in Irvine:

///

///

///

///

///

///

COMPLAINT

id: 878621089183024
ev: Microdata
dl: https://www.eatingrecoverycenter.com/recovery-centers/irvine
rl: https://www.eatingrecoverycenter.com/recovery-centers/california
h: 4025
ts: 1676539820470
cd[DataLayer]: []
cd[Meta]: {"title":"Eating Recovery Center Irvine | Eating Recovery Center","meta:description":"Located in Irvine, California - in Orange County - ERC Irvine serves medically-stable adolescents and adults with eating disorders.\n\nOur eating disorders program provides evidence-based treatment for all types of eating disorders, including ARFID and Binge Eating Disorder. This center is our second in the state and first in Southern California, with a PHP program that provides supportive meals and snacks 7 days a week, with daily opportunities to practice new recovery skills in a safe, healing e"}
cd[OpenGraph]: {"og:site_name":"Eating Recovery Center","og:url":"https://www.eatingrecoverycenter.com/recovery-centers/irvine","og:title":"Eating Recovery Center Irvine | Eating Recovery Center","og:description":"Located in Irvine, California - in Orange County - ERC Irvine serves medically-stable adolescents and adults with eating disorders.\n\nOur eating disorders program provides evidence-based treatment for all types of eating disorders, including ARFID and Binge Eating Disorder. This center is our second in the state and first in Southern California, with a PHP program that provides supportive meals and snacks 7 days a week, with daily opportunities to practice new recovery skills in a safe, healing e"}
cd[Schema.org]: []
cd[JSON-LD]: [{"@context":"https://schema.org","@graph":[{"@type":"MedicalBusiness","@id":"https://www.eatingrecoverycenter.com/recovery-centers/irvine","description":"<p>Located in Irvine, California - in Orange County - ERC Irvine serves medically-stable adolescents and adults with eating disorders.</p>\n\n<p>Our eating disorders program provides evidence-based treatment for all types of eating disorders, including ARFID and Binge Eating Disorder. This center is our second in the state and first in Southern California, with a PHP program that provides supportive meals and snacks 7 days a week, with daily opportunities to practice new recovery skills in a safe, healing environment.</p>","name":"Eating Recovery Center Irvine","url":"https://www.eatingrecoverycenter.com/recovery-centers/irvine","telephone":"949-504-4673","address":{"@type":"PostalAddress","streetAddress":"114 Pacifica #450,","addressLocality":"Irvine","addressRegion":"CA","postalCode":"92618","addressCountry":"US"}}}]

:authority: www.facebook.com
:method: GET
:path: /tr/?id=909314106089721&ev=PageView&dl=https%3A%2F%2Fwww.eatingrecoverycenter.com%2Frecovery-centers%2Firvine&rl=https%3A%2F%2Fwww.eatingrecoverycenter.com%2Frecovery-centers%2Fcalifornia&if=false&ts=1676824363299&sw=1920&sh=1080&v=2.9.96&r=stable&a=tmgoogletagmanager&ec=0&o=30&cs_est=true&fbp=fb.1.1676466470419.1328682039&it=1676824362408&coo=false&rqm=GET
:scheme: https
accept: image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
accept-encoding: gzip, deflate, br
accept-language: en-US,en;q=0.9,he-IL;q=0.8,he;q=0.7
cookie: sb=hpKyY6Wa_S1cjRXq3B1piiJHu; datr=P-S-Y0nVQQMMYyU5uouVeImI; c_user=10007594    xs=12%3AJaykUFgVCGi7YA%3A2%3A16
73454670%3A-1%3A-1%3A%3AAAcWQF7D8aiCE1J3_apOAZrKANhMvCPJ7ipjToq6bFQ; fr=0mEbC9Ubieton8u9f.AWUPyy4bi9vRI04k8Pa_bdSZuCw.BjG5yO.2_.AAA.0.0.BjG5yO.AWUYgCpfDFE
referer: https://www.eatingrecoverycenter.com/
sec-ch-ua: "Chromium";v="110", "Not A(Brand";v="24", "Google Chrome";v="110"
sec-ch-ua-mobile: ?0
sec-ch-ua-platform: "Windows"
sec-fetch-dest: image
sec-fetch-mode: no-cors
sec-fetch-site: cross-site
user-agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/110.0.0.0 Safari/537.36

49.   Anyone reviewing the above information would obtain information concerning the user's condition, treatment, general age, and general location.

50.   ERC also shares information concerning users' registration for support groups. ERC offers several support groups that users can join online. When a user joins a support group through ERC's websites, this information is sent to Meta via the Pixel in the following manner, which involves a user signing up for the "Monday Midday LGBTQ+ Eating Disorder and Body Image Support Group":

```
:authority: www.facebook.com
:method: GET
:path: /tr/?id=909314106089721&ev=PageView&dl=https%3A%2F%2Fwww.eatingrecoverycenter.co
m%2Fevent%2Fmonday-midday-lgbtq-eating-disorder-body-image-support-group&rl=https%3A%2
F%2Fwww.eatingrecoverycenter.com%2Fsupport-groups&if=false&ts=1676540554300&sw=1920&sh
=1080&v=2.9.95&r=stable&a=tmgoogletagmanager&ec=0&o=30&cs_est=true&fbp=fb.1.1676466470
419.1328682039&it=1676540554083&coo=false&rqm=GET
:scheme: https
accept: image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
accept-encoding: gzip, deflate, br
accept-language: en-US,en;q=0.9,he-IL;q=0.8,he;q=0.7
cookie: sb=hpKyY6Wa_S1cjRXq3B1pijHu; datr=P-S-Y0nVQQMMYyU5uouVeImI; c_user=10007594
   ; xs=12%3AJaykUFgVCGi7YA%3A2%3A1673454670%3A-1%3A-1%3A3A%3AAcWQF7D8aiCE1J3_apOAZrKANh
MvCPJ7ipjToq6bFQ; fr=0mEbC9Ubieton8u9f.AWUPyy4bi9vRI04k8Pa_bdSZuCw.Bj65yO.2_.AAA.0.0.B
j65yO.AWUYgCpfDFE
referer: https://www.eatingrecoverycenter.com/
sec-ch-ua: "Chromium";v="110", "Not A(Brand";v="24", "Google Chrome";v="110"
sec-ch-ua-mobile: ?0
sec-ch-ua-platform: "Windows"
sec-fetch-dest: image
sec-fetch-mode: no-cors
sec-fetch-site: cross-site
```

51.   Anyone reviewing the above information would obtain information concerning the user's medical condition, treatment, and sexuality.

52.   ERC also shares keyword searches by users when using ERC's internal search bar, which often includes information concerning the user's condition, symptoms, treatment,

etc. For example, when a user uses the search bar to search "eating disorder," ERC provides the following information to Meta:

:authority: www.facebook.com
:method: GET
:path: /tr/?id=870621089183024&ev=Microdata&dl=https%3A%2F%2Fwww.eatingrecoverycenter.com%2Fsearch%3Fkeyword%3Deating%2520disorder&rl=https%3A%2F%2Fwww.eatingrecoverycenter.com%2Finsurance&if=false&ts=1676824623114&cd[DataLayer]=%5B%5D&cd[Meta]=%7B%22title%22%3A%22Search%20%7C%20Eating%20Recovery%20Center%22%2C%22meta%3Adescription%22%3A%22Browse%20our%20site%20for%20physician%20and%20leadership%20bios%2C%20resources%2C%20locations%2C%20care%20options%2C%20and%20more.%20Eating%20Recovery%20Center%20is%20here%20to%20assist%20in%20any%20way%20we%20can.%22%7D&cd[OpenGraph]=%7B%22og%3Asite_name%22%3A%22Eating%20Recovery%20Center%22%2C%22og%3Aurl%22%3A%22https%3A%2F%2Fwww.eatingrecoverycenter.com%2Fsearch%22%2C%22og%3Atitle%22%3A%22Search%20%7C%20Eating%20Recovery%20Center%22%2C%22og%3Adescription%22%3A%22Browse%20our%20site%20for%20physician%20and%20leadership%20bios%2C%20resources%2C%20locations%2C%20care%20options%2C%20and%20more.%20Eating%20Recovery%20Center%20is%20here%20to%20assist%20in%20any%20way%20we%20can.%22%7D&cd[Schema.org]=%5B%5D&sw=1920&sh=1080&v=2.9.96&r=stable&a=tmgogletagmanager&ec=1&o=30&fbp=fb.1.1676466470419.1328682039&lt=1676824622517&coo=false&es=automatic&tm=3&rqm=GET
:scheme: https
accept: image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8
accept-encoding: gzip, deflate, br
accept-language: en-US,en;q=0.9,he-IL;q=0.8,he;q=0.7
cookie: sb=hpKyY6Wa_S1cjRXq38IpijHu; datr=P-S-Y0mVQQYMYyU5uouVeImI; c_user=100075943XXX; xs=12%3AJayXUFgVCGi7YAN3A2%3A167345467%3A1%3A-1%3A%3A1%3A%3AAcxWQF7D8aICE133_apOAZrKAWhNvCPJ7ipjTooqbFQ; fr=0mEbC9Ubieton8u9f.AWUPyy4bi9vRI04k8Pa_bdSIuCw.Bj6SyO.2_.AAA.0.0.Bj6SyO.AWUYgCpfDFE
referer: https://www.eatingrecoverycenter.com/
sec-ch-ua: "Chromium";v="110", "Not A(Brand";v="24", "Google Chrome";v="110"
sec-ch-ua-mobile: ?0

53.    Again, anyone reviewing this information would obtain information concerning the user's medical condition.

**C.    Tolling**

54.    Any applicable statute of limitations has been tolled by ERC's knowledge and concealment of the unlawful conduct and misrepresentations alleged herein. Plaintiff and Class Members could not have discovered ERC's unlawful conduct through reasonable diligence.

55.    ERC knowingly, actively, affirmatively and/or negligently concealed the facts alleged herein. Plaintiff and Class Members reasonably relied on ERC's concealment.

///

///

///

///

///

///

COMPLAINT

## VI.   CLAIMS ALLEGED ON BEHALF OF THE CLASS

## COUNT I

### Violation of the California Invasion of Privacy Act, Cal. Penal Code § 630, et seq.
(Plaintiff and Class Against All Defendants)

56.     Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs as if set forth herein.

57.     California Penal Code § 631(a) provides in pertinent part:

Any person who, by means of any machine, instrument, or contrivance, or in any other manner . . . willfully and without the consent of all parties to the communications, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

58.     ERC aided, employed, agreed with, and/or conspired with Meta to track and intercept Plaintiff's and Class Members' communications while they used ERC's websites. These communications were intercepted by Meta while in transit, passing over a wire, line or cable, and were sent and/or received at a place within California. The communications were intercepted by Meta without the knowledge, authorization, or consent of Plaintiff or Class Members.

59.     ERC willfully and intentionally inserted an electronic device (the Pixel) into its website that, without the knowledge or consent of Plaintiff and Class Members, recorded and transmitted the substance of their confidential communications with ERC to Meta.

60.     The Pixel constitutes a machine, instrument, and/or contrivance as these terms are used in Cal. Penal Code § 631.

61.     ERC does not disclose that it is using the Pixel to permit Meta to track and automatically and in real time collect users' information and send it to Meta. In fact, ERC

represents that users' communications are "100% Confidential" and that it "does NOT collect your personal information while you visit our website" and will "NEVER share or sell your personal information to a third party of any nature."[5]

62.     The communications that ERC permits Meta to intercept include: (i) the medical treatment users are receiving or considering; (ii) answers to diagnostic quizzes; (iii) locations where users are obtaining or considering receiving treatment; (iv) support groups for which users register; and (v) all information entered into the website's internal search bar. This information constitutes protected private and medical information.

63.     Meta and ERC use the information intercepted by the Pixel for pecuniary purposes. Meta uses the information to increase the value of its advertising services and ad placed on its websites and apps. In exchange for providing its users' information to Meta, ERC receives information and analytics provided by Meta that ERC uses to refine and more effectively advertise to new and existing users.

64.     By violating Cal. Penal Code § 631, ERC is liable to Plaintiff and Class Members for the greater of (i) treble actual damages related to their loss of privacy or (ii) $5,000 per violation. Under Cal. Penal Code § 637.2(a), Plaintiff and Class Members need not suffer or be threatened with any additional damages.

65.     ERC is also liable for reasonable attorney's fees, litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury.

**COUNT II**

**Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10(a)**
**(Plaintiff and Class Against All Defendants)**

66.     Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs as if set forth herein.

67.     The CMIA prohibits health care providers from disclosing medical information relating to their users without authorization.

---

[5] https://www.eatingrecoverycenter.com/; https://www.eatingrecoverycenter.com/privacy-policy.

68.    "Medical information" refers to "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a user's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i)

69.    "Provider of health care" means "a person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code; a person licensed pursuant to the Osteopathic Initiative Act or the Chiropractic Initiative Act; a person certified pursuant to Division 2.5 (commencing with Section 1797) of the Health and Safety Code; or a clinic, health dispensary, or health facility licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code." Cal. Civ. Code § 56.05(o). ERC is a provider of health care under this definition.

70.    By imbedding the Pixel on its websites, ERC discloses medical information without the user's authorization.

71.    The information ERC discloses and shares with Meta constitutes medical information as the term is defined by the CMIA, including: (i) the medical treatment users are receiving or considering; (ii) answers to diagnostic quizzes, which contains information concerning the user's medical history, mental or physical conditions, and treatment; (iii) locations where users are obtaining or considering receiving treatment, which includes information concerning the user's mental or physical condition and treatment; (iv) support groups for which users register, which contains information concerning the user's mental or physical condition and treatment; and (v) all information entered into the websites' internal search bar, which can include information concerning the user's medical history, mental or physical condition, and treatment.

72.    ERC also discloses certain identifiers that make the medical information personally identifiable. This information includes: FIDs, names, mailing addresses, phone numbers, device identifiers, URLs, IP addresses, and other information.

73.    ERC does not obtain authorization to disclose Class Members' medical information. It also fails to disclose anywhere that it shares this information with any third

parties and actually claims the opposite in its Privacy Policy and through other statements on its websites.

74.     By violating the CMIA, ERC is liable to Plaintiff and Class Members for the greater of (i) actual damages or (ii) $1,000 per violation. *See* Cal. Civil Code § 56.36(b). Plaintiff and Class Members need not suffer or be threatened with any additional damages. *Id.*

75.     ERC is also liable for reasonable attorney's fees, litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury.

### COUNT III

### Violation of the Confidentiality of Medical Information Act, Cal. Civ. Code § 56.10(d) (Plaintiff and Class Against All Defendants)

76.     Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs as if set forth herein.

77.     The CMIA prohibits a health care provider or corporation from intentionally sharing, selling, using for marketing, or otherwise using medical information for a purpose not necessary to provide health care services to the patient without a patient's authorization.

78.     ERC is both a health care provider and corporation.

79.     By imbedding the Pixel on its websites, ERC intentionally shares, uses for marketing, or otherwise uses medical information for a purpose not necessary to provide health care services to their users without their authorization. Rather, ERC shares Class Members' information with Meta to improve advertising efficacy.

80.     The information ERC discloses and shares with Meta constitutes medical information as the term is defined by the CMIA, including: (i) the medical treatment users are receiving or considering; (ii) answers to diagnostic quizzes, which contains information concerning the user's medical history, mental or physical conditions, and treatment; (iii) locations where users are obtaining or considering receiving treatment, which includes information concerning the user's mental or physical condition and treatment; (iv) support groups for which users register, which contains information concerning the user's mental or physical condition and treatment; and (v) all information entered into the websites' internal

search bar, which can include information concerning the user's medical history, mental or physical condition, and treatment.

81.    ERC also discloses certain identifiers that make the medical information personally identifiable. This information includes: FIDs, names, mailing addresses, phone numbers, device identifiers, URLs, IP addresses, and other information.

82.    ERC does not obtain authorization to disclose Class Members' medical information. It also fails to disclose anywhere that it shares this information with any third parties and actually claims the opposite in its Privacy Policy and through other statements on its website.

83.    By violating the CMIA, ERC is liable to Plaintiff and Class Members for the greater of (i) actual damages or (ii) $1,000 per violation. *See* Cal. Civil Code § 56.36(b). Plaintiff and Class Members need not suffer or be threatened with any additional damages. *Id.*

84.    ERC is also liable for reasonable attorney's fees, litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury.

## COUNT IV

### Unjust Enrichment
### (Plaintiff and Class Against All Defendants)

85.    Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs as if set forth herein.

86.    Through the unlawful disclosure of the private and medical information of Class Members discussed herein, ERC has been unjustly enriched. ERC represented to users that it does not share personal or medical information with third parties and that users' information is "100% Confidential." Yet, ERC imbedded the Pixel on its websites, allowing Meta to obtain private and medical information from users. In exchange, ERC received information and analytics from Meta that allowed it to refine and more effectively advertise to new and existing users, increasing revenue as a result.

///

///

87.     Class Members were impoverished through ERC's unlawful disclosure of their personal information and medical information. The information disclosed by ERC is some of the most valuable information consumers possess, particularly information concerning the users' medical conditions, history, and treatment. ERC denied Plaintiff and Class Members the value of their private and medical information without any compensation.

88.     There is a direct and significant connection between ERC's enrichment and Plaintiff's and Class Members' impoverishment. ERC's unlawful disclosure of Plaintiff's and Class Members' private and medical information to Meta through the Pixel both led to ERC's enrichment and caused Plaintiff's and Class Members' impoverishment.

89.     There is no justification for ERC's enrichment. ERC simply placed profit above lawful conduct and representations made to Plaintiff and Class Members. If ERC behaved as promised to users and required by law, then their unjust enrichment would not have occurred.

90.     Plaintiff and Class Members have no adequate remedy at law.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests the following relief:

A.     A determination that this action is a proper class action under Federal Rule of Procedure Rule 23, certifying Plaintiff as Class representative, and appointing the undersigned counsel as Class counsel;

B.     Declaring that ERC violated CIPA by disclosing and/or permitting Meta to intercept and record Plaintiff's and Class Members' communications, which included private and medical information;

C.     Declaring that ERC violated the CMIA by disclosing Plaintiff's and Class Members' medical information to Meta;

D.     Declaring that ERC violated the CMIA by intentionally sharing, selling, using for marketing, or otherwise using Class Members' medical information for a purpose not necessary to provide health care services to them;

E.     Declaring that ERC was unjustly enriched by disclosing and/or permitting Meta to intercept and record Plaintiff's and Class Members' private and medical information;

F.     Awarding damages to Plaintiff and Class Members, including statutory damages, compensatory damages, punitive damages, and pre- and post-judgment interest to the extent permitted by law;

G.     Permanently enjoining ERC from disclosing Class Members' private and medical information to third parties without consent;

H.     Permanently enjoining ERC from using information and analytics provided by Meta based on ERC's unlawful disclosure of Class Members' private and medical information;

I.     Requiring ERC to take reasonable steps to alert all users whose private or medical information was unlawfully disclosed to Meta or any other third party;

J.     Requiring ERC to alert the California Attorney General's office that it unlawfully disclosed or permitted Meta to intercept and record the private and medical information of tens of thousands of California residents;

K.     Awarding attorney's fees, expenses, and taxable costs to the extent permitted by law; and

L.     Granting Plaintiff and Class Members such other further relief as the Court deems just and proper to protect their private and medical information.

///
///
///
///
///
///
///
///
///
///

COMPLAINT

## VIII.   JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

DATED: October 27, 2023

MOGINRUBIN LLP

/s/ *Timothy Z. LaComb*
Timothy Z. LaComb
Daniel J. Mogin
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone:    (619) 687-6611
Facsimile:    (619) 687-6610

Don Bivens PLLC
Don Bivens
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone:    (602) 708-1450
*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff*

COMPLAINT