James F. Monagle, Esq. (SBN 236638)
MULLEN COUGHLIN LLC
500 Capital Mall, Suite 2350
Sacramento, CA 95814
T: 267-930-1529
jmonagle@mullen.law

*Attorneys for Defendant*
*Eating Recovery Center LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>EATING RECOVERY CENTER, LLC,<br><br>Defendant. | **No.: 3:23-cv-00561-VC**<br><br>Assigned to Hon. Vince Chhabria<br><br>**DEFENDANT EATING RECOVERY CENTER LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>HEARING: July 31, 2025<br>TIME: 10:00 AM<br>PLACE: Courtroom 4 |

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................... 1

II.   OBJECTIONS TO PLAINTIFF'S FACTS .............................................................. 1

III.  ARGUMENT ........................................................................................................... 2

   A.   **Plaintiff Does Not Have Standing** ................................................................. 2

   B.   **ERC Did Not Violate CIPA** ........................................................................... 5

      a.   **Meta Did Not Violate § 631(a)'s Second Clause** ....................................... 5

      ii.   *Meta Did Not Read, Attempt to Read, or Learn the Contents of Plaintiff's Communications While in Transit* .............................................................. 7

      b.   **Meta Did Not Violate § 631(a)'s Third Clause** .......................................... 9

      c.   **ERC Did Not Violate § 631(a)'s Fourth Clause** ........**Error! Bookmark not defined.**

   C.   **ERC Did Not Violate the CMIA** .................................................................... 9

      a.   **Plaintiff Was Not a Patient of ERC** ..........................**Error! Bookmark not defined.**

      b.   **Plaintiff's Medical Information Was Not Impacted** .**Error! Bookmark not defined.**

      c.   **Meta Did Not "Actually View" Medical Information** ............ **Error! Bookmark not defined.**

   D.   **Plaintiff's Unjust Enrichment Claim Fails** ................................................... 15

IV.   CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*American Hospital Association v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024)................................................................. 15

*Barbour v. John Muir Health*,
2023 WL 2618967, *6-7 (Cal. Super. Ct., 2023) ............................................ 17, 18

*Beltran v. Doctors Med. Ctr. of Modesto*,
2:23-CV-01670-DC-CKD, 2025 WL 1635467, at *5 (E.D. Cal., June 9, 2025)...................... 15

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020)......................................................................... 3

*Castillo v. Costco Wholesale Corp.*, No.
2:23-CV-01548-JHC, 2024 WL 4785136, at *13-14 (W.D. Wash., Nov. 14, 2024) .............. 15

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) ........................................ 4

*Doe v. Davita Inc.*,
23-CV-01424-AJB-BLM, 2024 WL 1772854, at *2 (S.D. Cal., Apr. 24, 2024) .................... 16

*Eisenhower Med. Ctr. v. Superior Ct.*,
226 Cal. App. 4th 430, 434 (Cal. Ct. App. 2014................................................... 13

*Gaige v. Exer Holding Co., LLC*,
2:24-CV-06099-AH-(AJRX), 2025 WL 559719, at *1 (C.D. Cal., Mar. 2, 2025)............. 16, 17

*Goldstein v Costco Wholesale Corp.*,
559 F. Supp. 3d 1318, 1321 (S.D. Fl. 2021) ................................................................. 7

*Gray v. Luxottica of Am., Inc.*,
8:24-CV-00160-MRA-DFM, 2024 WL 5689566, at *8 (C.D. Cal., Dec. 16, 2024).......... 13, 15

*Gutierrez v. Converse Inc.*,
2:23-CV-06547-RGK-MAR, 2023 WL 8939221, at *3 (C.D. Cal., Oct. 27, 2023).............. 6, 9

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) ........................................................ 6

*Harrill v. Emanuel Med. Ctr.*,
2:23-CV-01672-DC-CKD, 2025 WL 1635428, at *8 (E.D. Cal., June 9, 2025)..................... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F3d 589, 605 (9th Cir. 2020)................................................................... 7

*In re Meta Pixel Healthcare Litig.*,
647 F Supp 3d 778, 795, n.10 (N.D. Cal. 2022) .......................................................... 6

*In re Zynga Privacy Litig.*,
750 F.3d 1098, 1108-09 (9th Cir. 2014) ..................................................................... 6

*Lien v. Talkdesk, Inc.*,
No. 24-CV-06467-VC, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025)............................ 3

*Lineberry v. AddShopper, Inc.*,
23-CV-01996-VC, 2025 WL 551864, at *3 (N.D. Cal., Feb. 19, 2025)............................. 4, 6

*Loder v. City of Glendale*,
14 Cal. 4th 846, 859 (1997)........................................................................ 17

*Love v. Ladder Fin., Inc.*,
 23-CV-04234-VC, 2024 WL 2104497, at \*1 (N.D. Cal., May 8, 2024) .................................. 6

*Martinez v. Costco Wholsesale Corp.*,
 336 F.R.D. 183, 189-190 (S.D. Cal. 2020) ............................................... 2

*Mastel v. Miniclip SA*,
 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) .......................................... 8

*McClung v. AddShopper, Inc.*,
 No. 23-CV-01996, 2024 WL 189006, \*1 (N.D. Cal. Jan. 17, 2024) ......................................... 4

*Pettus v. Cole*,
 49 Cal. App. 4th 402, 429 (1996) ................................................... 11, 13

*Provenz v. Miller*,
 102 F.3d 1478, 1483 (9th Cir. 1996) .................................................. 2

*R.C. v. Sussex Publishers, LLC*,
 24-CV-02609-JSC, 2025 WL 1735994, at \*2 (N.D. Cal., June 23, 2025) .......................... 8, 16

*Rodriguez v. Autotrader.com, Inc.*,
 762 F. Supp. 3d 921, 928 (C.D. Cal. 2025) ............................................... 8

*Rodriguez v. Ford Motor Co.*,
 722 F. Supp. 3d 1104, 1122-23 (S.D. Cal. 2024) ................................................... 9, 10

*Sarjeant v. Foster Wheeler LLC*,
 No. 24-CV-01216-VC, 2024 WL 4658106, at \*1 (N.D. Cal. Oct. 4, 2024) ............................. 1

*Smith v. Facebook, Inc.*,
 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017) ................................................... 7, 15

*Smith v. Facebook, Inc.*,
 745 Fed. Appx. 8, 9 (9th Cir. 2018) ................................................... 14, 15

*Smith v. YETI Coolers, LLC*,
 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024) ................................................... 10

*St. Aubin v. Carbon Health Tech., Inc.*,
 24-CV-00667-JST, 2024 WL 4369675, at \*4, n.4 (N.D. Cal., Oct. 1, 2024) ....................... 7, 16

*Sutter Health v. Superior Ct.*,
 227 Cal. App. 4th 1546, 1550 (2014) ................................................... 17, 18

*Tamraz v. Bakotic Pathology Assoc., LLC*,
 22-CV-0725-BAS-WVG, 2022 WL 16985001, at \*4 (S.D. Cal., Nov. 16, 2022) ................... 14

*Torres v. Prudential Fin., Inc.*,
 No. 22-cv-07465-CRB, 2025 WL 1135088, at \*5 (N.D. Cal. Apr. 17, 2025) ........................... 8

*TransUnion LLC v. Ramirez.*
 594 U.S. 413, 426 (2021) ................................................... 3

*Van Asdale v. International Game Technology*,
 577 F.3d 989, 998 (9th Cir. 2009) ................................................... 2

*Vigil v. Muir Med. Group IPA, Inc.*,
 84 Cal. App. 5th 197, 213 (2022) ................................................... 11

*Wilson v. Rater8, LLC*,
 No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at \*5 (S.D. Cal. Oct. 18, 2021) ................... 14

*Yockey v. Salesforce, Inc.*,
    745 F. Supp. 3d 945, 953 (N.D. Cal. 2024) ......................................................... 9

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp 3d 1073, 1086 (C.D. Cal. 2021) ........................................................ 6

*Zarif v. Hwareh.com, Inc.*,
    23-CV-0565-BAS-DEB, 2025 WL 486317, at *1, 14 (S.D. Cal., Feb. 13, 2025) .............. 12, 15

**Statutes**

Cal. Civ. Code §  56.10 ......................................................................................... 17
Cal. Civ. Code §  56.101 ....................................................................................... 17
Cal. Civ. Code § 56.10(a) ..................................................................................... 11
Cal. Civ. Code § 56.10(d) ..................................................................................... 11
Cal. Civ. Code § 56.101(a) .................................................................................... 11
Cal. Civ. Code § 56.05(j) ...................................................................................... 13
Cal. Civ. Code § 56.05(m) .................................................................................... 11
Cal. Penal Code § 631(a) ............................................................................. 5, 8, 9, 11
Federal Rule of Evidence 401 ............................................................................. 1, 2, 3
Federal Rule of Evidence 403 ............................................................................. 1, 2, 3
Federal Rule of Evidence 611(a)(1) ......................................................................... 1, 2
Federal Rule of Evidence 901 ............................................................................... 1, 3

## I.    INTRODUCTION

Plaintiff's final brief largely repeats arguments from her initial brief, sometimes word for word, though sometimes with reference to brand new evidence not vetted during discovery. Plaintiff should not be permitted to introduce new expert opinions or sham affidavits contrary to prior testimony. Regardless, Plaintiff fails to present a triable issue of fact on any of her claims.

## II.    OBJECTIONS TO PLAINTIFF'S FACTS

ERC objects to the following on grounds that the cited evidence does not say or support what Plaintiff claims they do, i.e., they Assume Facts Not In Evidence and Mischaracterize the Evidence (FRE 401/403, 611(a)(1)): **Ex. 2** (pg. 13:15-16); **Ex. 3 / Reply Ex. 2** (4:20-22, 5:17-19, 5:27-6:2, 7:11-16, 7:16-17; 7:19-21; 7:22-23, 9:3-5; 9:22-24, 12:1-4, 13:15-16, 13:28-14:1, 14:4-7, 16:14-19, 17:20-23, 18:25-27, 19:7-9, 19:10-12); **Ex. 4** (4:20-22, 5:17-19, 5:27-6:2, 7:11-16, 7:19-21, 7:22-23, 13:15-16, 18:25-27, 19:7-9, 19:25-27); **Ex. 5** (5:27-6:2, 13:15-16, 13:27-28, 15:1-3); **Ex.9; Reply Ex. 10** (13:25-27, 13:27-28, 15:3-5); **Ex. 11; Reply Ex. 9** (13:15-16 [include ruling on depo objections], 13:16-18 [include ruling on depo objections], 13:25-27 [include ruling on depo objections], 14:1-2, 14:4-7, 16:10-13); **Ex. 12** (14:1-2); **Ex. 14** (7:4-6; 14:1-2, 16:13-14, 17:18-20, 17:23-25); **Ex. 16; Reply Ex. 12** (7:16-19, 9:3-6, 11:26-12:1 [include ruling on depo objections], 12:23-27); **Ex. 20** (13:16-18, 14:4-7, 19:15-17); **Ex. 26** (14:4-7, also Lacks Foundation/Authentication (FRE 901)); **Reply Ex. 1** (13:15-16).  ERC similarly objects to Plaintiff's references to **Ex.31** (17:23-25), **Exs. 33, 34** (18:26-19:3), **Exs. 35, 36** (18:3-6), purporting to establish that ERC provided **medical services** to Plaintiff, for Assuming Facts Not In Evidence / Mischaracterizing the Evidence (FRE 401/403, 611(a)(1)), and Lacks Foundation/Authentication (FRE 901).  ERC additionally objects to the Reply Declaration of Plaintiff **Reply Ex. 13** (17:22-23, 16:13-14, 18:9-12) and moves to strike it under the sham affidavit doctrine. *See generally Sarjeant v. Foster Wheeler LLC*, No. 24-CV-01216-VC, 2024 WL 4658106, at *1 (N.D. Cal. Oct. 4, 2024). Plaintiff's new testimony that she ███████████ ███████████ unambiguously contradicts Plaintiff's prior testimony that ███████████ ███████████ ███████████. [PD 37:14-25; 13:18-25].  If not stricken under the sham affidavit doctrine due to

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

-1-

ambiguity, Plaintiff's references to her actions "prior to the filing of this action on October 27, 2023" should not be credited, or ERC should be allowed to cross-examine Plaintiff about them. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). ERC objects to the following untimely produced documentary evidence (screenshots), on the grounds of Hearsay (FRE 802), Lacks Foundation/Authentication (FRE 901) and Best Evidence (FRE 1002): **Reply Exs. 3, 4** (4:23-26, 5:5-6, 7:6-9); **Reply Exs. 5, 6** (7:3-4). ERC objects to **Ex. 23** (16:23-25) and **Reply Ex. 11** (10:10-12, 10:12-14, 10:15-18, 11:26-12:1, 12:1-5,12:6-9) on grounds they constitute Unqualified / Improper / Inadmissible Expert Testimony (FRE 702; see Dkt. 81 – ERC's Daubert Motion), and they Assume Facts Not In Evidence and Mischaracterize Evidence (FRE 401/403, 611(a)(1)). ERC additionally objects to the entirety of **Reply Ex. 11** as untimely under Fed. R. Civ. P. 37(c)(1); *see also Martinez v. Costco Wholsesale Corp.*, 336 F.R.D. 183, 189-190 (S.D. Cal. 2020). ERC also objects to the following references on grounds they Assume Facts Not In Evidence and they Mischaracterize the Evidence (FRE 401/403, 611(a)(1)), as well as on grounds of Relevance (FRE 401), and that they Lack Foundation/Authentication (FRE 901), including additional objections where noted: **Ex. 24** (10:10-12, 10:12-14, 10:15-18, 11:4-6, 11:6-8, 11:8-10, 11:13-14, 11:14-17) [forensic data unrelated to Plaintiff's website visits, also excludable under FRE 401/403; see Dkt. 80]; **Reply Exs. 14-15** (14:2-4) (no means of contractual agreement addressed, and no bearing on terms in place at time of ERC's use of Meta Pixel). Lastly, although Plaintiff's Reply brief at 9:24-26 contains argument without an evidentiary reference, it Assumes Facts Not In Evidence (FRE 401/403) and Lacks Foundation/Authentication (FRE 901).

**III.      ARGUMENT**

**A.      Plaintiff Does Not Have Standing**

Plaintiff makes two standing arguments: one inapt, and one erroneous. The inapt argument is that Plaintiff's evidence supports a finding that she has been harmed in a manner analogous to privacy torts like intrusion upon seclusion. The erroneous argument is that if Plaintiff's evidence supports a finding that a violation of CIPA occurred, Plaintiff has standing. *See* MSJ3[1], p.3 (contending that CIPA "on its own" gives rise to concrete injury). This argument ignores the

---

[1] "MSJ3" refers to the third MSJ Brief, filed by Plaintiff on June 27, 2025.

Supreme Court's unmistakable proscription against statutorily-based standing set forth in *TransUnion LLC v. Ramirez.* 594 U.S. 413, 426 (2021).

In one of only two[2] cases cited by Plaintiff in support of her intrusion upon seclusion theory, *Lien v. Talkdesk, Inc.*, No. 24-CV-06467-VC, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025), the plaintiffs alleged their personal information was intercepted, and likened their harm to intrusion upon seclusion. This Court found their allegations insufficient "because the plaintiffs ha[d] not alleged a concrete injury sufficient to establish Article III standing." Addressing the plaintiffs' claim that intrusion upon seclusion was "the best common law analog for their asserted harm," this Court noted that the tort is limited to intrusions that are highly offensive to a reasonable person." *Id*. (citation omitted). Accordingly, this Court ruled:

> The information allegedly intercepted by Talkdesk—the plaintiffs' phone numbers and questions they asked about store hours, events, and products carried by the retailers—is simply not private or personal enough to confer standing where each plaintiff alleges only that it was collected from one call made to one retailer.

*Id.* (citations omitted). A similar finding should be made here.

Plaintiff's analogy to disclosure of private information or a general right of privacy fares no better. MSJ3, p.4-5. Again, Plaintiff conflates requisite concrete harm analysis based on a common law claim with outdated analyses based on statutes purportedly codifying such claims. *Id*., p.4. Thus, Plaintiff almost exclusively[3] relies on pre-*TransUnion* decisions, some of which do not even analyze standing.

In *Lineberry v. AddShopper, Inc.*, this Court recently instructed: "Whether browsing activity is private or personal enough [to confer standing based on a privacy injury] depends on the facts of each case, including how much information is captured and how it is aggregated or used." No. 23-CV-01996-VC, 2025 WL 551864, at *1 (N.D. Cal. Feb. 19, 2025). In finding the

---

[2] The other Plaintiff-cited case, *Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) pre-dates *TransUnion* and is distinguishable on that critical basis. Although *Campbell* held that a "wiretapping plaintiff need not allege any further harm to have standing," statutory-based harms do not suffice post-*TransUnion*.

[3] Plaintiff cites a single post-*TransUnion* case, *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025), but her reliance is misplaced, as *Conohan* relies on pre-*TransUnion* cases, or other cases which lack a concrete harm analysis *TransUnion* requires.

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

-3-

plaintiffs had pled standing in their complaint, this Court held that "[m]isappropriating a person's browsing activity across a network of thousands of online retailers and using it to barrage that person's devices with unwanted email communications (particularly without giving the person a way to put a stop to the communications) is the type of intrusion on privacy and seclusion that can be vindicated in the federal courts." *Id.* (citing *McClung v. AddShopper, Inc.*, No. 23-CV-01996, 2024 WL 189006, *1 (N.D. Cal. Jan. 17, 2024)). Rejecting defendants' stranding challenge, the court cited an allegation "describing how AddShoppers' 'business model hinges on its ability to send targeted emails to individuals who never voluntarily provided their email address ...'" *Id.*

A stark factual contrast can be drawn between the allegations at issue in *Lineberry* and the evidence before the Court in this case.  Despite Plaintiff's attempt to characterize the information at issue as "highly personal and private information concerning ███████████████," (MSJ3, p.4), the data transmitted to Meta includes nothing more personal than (1) ████████████████████████████████████ and (2) ████████████████████████████████████████████████. Exs. 1-2; Villegas Dec., ¶6. Nor do Plaintiffs attempt to argue that the ████████████ was utilized by ERC or Meta in any way.

At worst, Plaintiff may have received some advertisements from ERC due to her having previously visited ERC's website URLs. But ERC is an entity ███████████████████████████████████████, and Plaintiff received at least fifty marketing emails from ERC ████████████████████████████. Reply Ex. 3[4]. When asked at her deposition if she had any problem at all with any of these marketing emails she received from ERC, ██████████████████████. Reply Ex. 1, pp.43:25-44:25. ████████████████████ *Id.*, pp.38:8-40:3 (██████████████████████████████████). Similarly, Plaintiff did not ████████████████████████████. *Id.*, p.52:4-9. Plaintiff was shown ███████████████████████, and Plaintiff could not recall interacting with

---

[4] References to "Reply Ex." refer to exhibits to the Reply Declaration of James Monagle in Further Support of ERC's Motion for Summary Judgment dated July 11, 2025.

or reading any of them. *Id.*, pp.48:7-50:1; Ex. 3[5]. Under these facts, by no stretch of the imagination could Plaintiff's alleged harm be characterized as "highly offensive" to Plaintiff or a reasonable person. Plaintiff has not made a showing of concrete injury and lacks standing.

**B.      ERC Did Not Violate CIPA**

Because ERC cannot be liable under the first three clauses of Cal. Penal Code § 631(a), the remaining issues are whether Meta violated the second or third clauses, and if so, whether ERC violated the fourth clause by aiding and abetting Meta. No evidence establishes Meta violated CIPA, therefore ERC cannot be liable either, although ERC lacks the requisite intent too.

**a.      Meta Did Not Violate § 631(a)'s Second Clause**

A party violates the second clause of § 631(a) when it reads, or attempts to read, or to learn the contents or meaning of any message, report, of communication while the same is in transit.  There is no evidence that Meta read or learned the contents of communications in transit.

***i.      The Contents of Plaintiff's Communications Were Not Disclosed***

Courts hold that contents "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message such as ... pages viewed." *Gutierrez v. Converse Inc.*, 2:23-CV-06547-RGK-MAR, 2023 WL 8939221, at *3 (C.D. Cal., Oct. 27, 2023) (citation omitted). To determine whether information is content, courts employ a "case-specific" analysis. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022). The Meta data associated with Plaintiffs visits to ERC's website (the "Plaintiff Data") is found in Exs. 1-2. It includes (1) ████████████████ reflected in Ex. 1 and (2) ███████████████████████████ reflected in Ex. 2.

Plaintiff contends that this information showed ████████████████████████████████████████████████ and this constitutes "contents of communications" under CIPA. MSJ3, p.7:22-25.[6] Yet most courts hold that information

_____

[5] Unless otherwise noted, references to "Ex." Refer to Exhibits to the Declaration of James Monagle in Support of ERC's Motion for Summary Judgment dated June 13, 2025.
[6] In Plaintiff's view, ████████████████████████ ████████████████████ (Reply Ex. 2, pp.92:6-93:13) whereas ERC's expert contends the data in this matter does not reveal any of Plaintiff's "communications" with ERC.

regarding public website browsing data does not comprise the contents of a communication. *See, e.g., Yoon v. Lululemon USA, Inc.*, 549 F. Supp 3d 1073, 1086 (C.D. Cal. 2021) (collecting cases). Instead, courts often require user-inputted search terms or queries that demonstrate an intended message conveyed by the communication. *See, e.g., In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) (URLs with "basic identification and address information" not "content," while URLs that "contain[ a] search term" could be); *Love v. Ladder Fin., Inc.*, 23-CV-04234-VC, 2024 WL 2104497, at *1 (N.D. Cal., May 8, 2024) (defendants allegedly "capture[d] a user's entire site visit," but only form entries qualified as the "contents or meaning" of a communication) (collecting cases); *In re Meta Pixel Healthcare Litig.*, 647 F Supp 3d 778, 795, n.10 (N.D. Cal. 2022) (URLs that include both a "path" and a "query string" which indicates that a user performed a search can be contents of communication); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F3d 589, 605 (9th Cir. 2020) (URLs that "emanate from search terms" could be contents); *St. Aubin v. Carbon Health Tech., Inc.*, 24-CV-00667-JST, 2024 WL 4369675, at *4, n.4 (N.D. Cal., Oct. 1, 2024) (allegations regarding descriptive URLs sufficient where plaintiff's "complaint contain[ed] examples of actual searches").

The ▮▮▮▮▮▮▮▮▮▮▮▮ in the Plaintiff Data ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, not search terms or other user-inputted communications. Ex. 1; Ex. 2; Ex. 9, ¶¶ 10, 28-39; Ex. 10, ¶¶ 5-8, 17-18, 25-27, 31-35; Villegas Dec., ¶¶19-22. Plaintiff contends several URLs at issue ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MSJ3, p.8:1-8. However, "the connection between a person's browsing history and his or her own state of health is ... tenuous" at best. *See Smith v. Facebook, Inc.*, 745 Fed. Appx. 8, 9 (9th Cir. 2018). For instance, according the Plaintiff Data ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, shortly before the initial Complaint in this action was filed. Ex. 1 at Row 56. By then, Plaintiff had likely already

Ex. 10, ¶¶5, 22-26. Case law does not support Plaintiff's broad view of communications under CIPA. *See Lineberry v. AddShopper, Inc.*, 23-CV-01996-VC, 2025 WL 551864, at *3 (N.D. Cal., Feb. 19, 2025) (indicating that "... just the IP address and fact that the website was accessed on a particular date" should not be considered the contents of communications under CIPA). Incredibly, Plaintiff's counsel argues this Court made the exact opposite finding in *Lineberry* regarding such "record data." *See* MSJ3, p.9:6-8.

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
-6-

been recruited as a named plaintiff (*see* Reply Ex. 1, p. 96:23-97:7; 100:11-15), ████████ ████████████████████████████████████████████████████████ Ex. 11, pp. 18:12-20; 37:14-25. Thus, the fact Plaintiff ████████████████ on that date does not indicate she was ██████████████████████████████████.

Plaintiff contends that ERC's arguments contradict this Court's prior holdings. MSJ3, p.9:9-17. ERC already demonstrated that those cases are factually inapposite, and proved the point that user-inputted information is the touchstone for URLs that have been deemed contents of communications. MSJ2[7], p.16:8-20; *see also Goldstein v Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fl. 2021) (finding "mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store."). Finally, the ████████████ in Ex. 2 contained ████████████████████████████████████ with no other explanatory information. ██████████████████ could not convey the substance or meaning of a communication because without context, they lack meaning. MSJ2, pp.4:13-5:3.

### ii.    *Meta Did Not Read, Attempt to Read, or Learn the Contents of Plaintiff's Communications While in Transit*

Plaintiff asserts that it is "likely not a requirement" for CIPA liability "to read, attempt to read, or learn the contents of the communications while in transit." MSJ3, p.11:19-23. This argument is contrary to the plain text of CIPA and case law. *See* Cal. Penal Code § 631; *see also R.C. v. Sussex Publishers, LLC*, 24-CV-02609-JSC, 2025 WL 1735994, at *2 (N.D. Cal., June 23, 2025) ("[T]he crucial question under § 631(a)'s second clause is whether [Plaintiffs] ha[ve] plausibly alleged that [a third party] *read* one of [their] communications *while it was still in transit, i.e., before it reached its intended recipient*." (citing *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021)) (emphasis added); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 928 (C.D. Cal. 2025) ("To establish a violation of clauses two and three [of § 631(a)], a plaintiff must show that a party willfully *read or attempted to read* the contents of a private communication *while the message was in transit*.") (emphasis added).

---

[7] "MSJ2" refers to the second MSJ Brief, filed by ERC on June 13, 2025.

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

"Though section 631 does not define 'read' or 'attempt to read,' courts generally conclude that liability under prong two of section 631 requires some effort at understanding the substantive meaning of the message, report or communication." *Torres v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (citation omitted). Plaintiff adduces no evidence capable of creating a triable dispute regarding whether Meta read or learned the alleged contents of Plaintiff's communications at all, much less while in transit. Plaintiff's only argument is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MSJ3, pp. 11:25-12:5. But Plaintiff's evidence only concerns ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*[8]; Ex. 2. No evidence exists suggesting ▮▮▮▮▮▮▮ entailed an effort at understanding the substantive meaning of any communication, or ▮▮▮▮▮▮ occurred while in transit, and Meta's representative could not say ▮▮▮▮▮▮▮. Ex. 12, pp.88:22-98:6. The mere fact that Plaintiff contends such information ▮▮▮▮▮▮▮▮ supports ERC's argument that if Meta "read" the data at all, it did so after the data was in transit.

Courts at the summary judgment stage have dismissed CIPA cases based on the Plaintiff's failure to prove communications were read while in transit, in part because it is "virtually impossible" to learn the contents of an internet communication in transit because such communications are transmitted "in different network packets[.]" MSJ2, p.19:3-18. One of those dismissals was upheld by the Ninth Circuit within the past few days. *See Gutierrez v. Converse Inc.*, CV 23-6547-KK-MARX, 2024 WL 3511648, at *7 (C.D. Cal., July 12, 2024), aff'd sub nom. 24-4797, 2025 WL 1895315 (9th Cir., July 9, 2025). Both cases cited by Plaintiff, on the other hand, were decided at the motion to dismiss stage where the plaintiff's allegations had to be

---

[8] Plaintiff also attempts to rely on the Strebe Reply Dec., which, as discussed above, offers new opinions and cannot be admitted. In any event, in the paragraph on which Plaintiff relies (¶9) Strebe merely restates Meta's testimony and then opines without basis or expertise (and despite his frequently acknowledged lack of knowledge of Meta's internal processes) that " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Strebe's opinion must be excluded even if it had been timely.

accepted, and even they acknowledged that "[t]he crucial question under § 631(a)'s second clause is whether [a plaintiff] has plausibly alleged that [the defendant] read one of his communications while it was still in transit, *i.e.*, before it reached its intended recipient." *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 953 (N.D. Cal. 2024).

### b.    Meta Did Not Violate § 631(a)'s Third Clause

"[A] finding of a violation under clause three [of § 631(a)] is contingent upon a finding of a violation of either clause one or two." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1122-23 (S.D. Cal. 2024) (citations omitted). Plaintiff does not contest this point.  As previously demonstrated, the contents of Plaintiff's communications were not read or learned while in transit. Nor is there evidence that Meta "used," "attempted to use," or "communicated" "any information so obtained" so as to violate the third prong of § 631(a). MSJ2, pp.20:5-22:2.

### a.   ERC Did Not Violate § 631(a)'s Fourth Clause

A party cannot violate the fourth clause of § 631(a) unless it aids another party's violation of one of the first three clauses. Because there is no evidence that Meta violated those first three clauses, ERC cannot be liable under the fourth clause for aiding Meta.

Plaintiff's CIPA claim separately fails because ERC did not have an intent to aid and abet any violation of the statute. While some courts have seemingly not required any scienter requirement under this clause, despite being part of the Penal Code, at the very least "§ 631(a)'s fourth clause does require some level of knowledge and intent." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024); *see also Rodriguez*, 722 F. Supp. 3d at 1124 (dismissing CIPA cause of action under the fourth clause of § 631(a) based on the plaintiff's failure to allege that the defendants "knew [the third party's] conduct constituted a breach of some duty."). No evidence suggests ERC knew that Meta's conduct violated CIPA or ERC had the purpose to aid, agree with, or employ Meta to violate CIPA, and Plaintiff did not allege ERC had any such knowledge.

### C.    ERC Did Not Violate the CMIA

The purpose of the CMIA is to protect the confidentiality of patients' medical information. *See Vigil v. Muir Med. Group IPA, Inc.*, 84 Cal. App. 5th 197, 213 (2022) (citation omitted).  In

accordance with that purpose, all three of Plaintiff's CMIA causes of action only apply when a patient's medical information under the CMIA is at issue. Because the Plaintiff was not a patient of ERC and her medical information was not impacted, the protections of the CMIA do not apply.

        a.       **Plaintiff Was Not a Patient of ERC**

Although Plaintiff admitted that ███████████████████████████ ██████████████ (Ex. 11, pp.23:19-24:2, 26:12-13), Plaintiff nevertheless contends that ██████████████████████████████. Under the CMIA, a patient is "any natural person, whether or not still living, who received health care services from a provider of health care and to whom medical information pertains." Cal. Civ. Code § 56.05(m). Plaintiff cites *Pettus v. Cole*, 49 Cal. App. 4th 402, 429 (1996) for the proposition that ERC ██████████████ ████████████████████████████████ yet ERC did not perform any professional medical services for Plaintiff. As previously discussed, Plaintiff ██████████ ████████████████████████████████████████████ ████████████████████ MSJ2, pp.2:10-3:3; 23:8-16.

Plaintiff argues that ERC ████████████████████████████ ████████████████████████. MSJ3, p.17:17-18. However, Plaintiff's cited evidence does not show that she disclosed medical information to ERC or received professional medical services. Plaintiff states that she ████████████████████████████ ██████████████████████████████████████████████. MSJ3, p.17:20-23. However, ERC received no medical information related to Plaintiff through its website, whether through a self-assessment form or a "diagnostic quiz" (and the quizzes on ERC's website do not provide any sort of diagnosis and cannot be considered professional services performed by medical professionals). MSJ2, pp.3:4-16. There is no evidence that ERC knew Plaintiff had visited its public website, and visiting a public website cannot make one a patient of the website's provider. *See Zarif v. Hwareh.com, Inc.*, 23-CV-0565-BAS-DEB, 2025 WL 486317, at *14 (S.D. Cal., Feb. 13, 2025) (dismissing CMIA claim where plaintiff alleged that she "browsed for medications for herself and others on Defendant's website," finding such browsing did not amount to receipt of health care services).

Plaintiff further asserts that she ███████████████████████████████ ███████████████████████ MSJ3, p.17:23-25. Again, Plaintiff's cited evidence does not support this statement. The citation to Plaintiff's deposition testimony only references that Plaintiff interacted with ERC's website, and the internal ERC document Plaintiff cites (Pl. Ex. 31) only shows that ████████████████████████████████ ██████████████████████████████. Plaintiff cannot dispute ERC's evidence that she █████████████████████████ who did not provide professional medical services. Nor is it "telling" at all that ERC's call response staff █████████████████████████ ███████████████ cannot be considered providing professional services subject to the CMIA. *See Pettus*, 49 Cal. App. 4th at 429; Villegas Dec. ¶24.

Likewise, Plaintiff can only offer attorney argument that ERC's administrative documentation shows ERC ███████████████████████████████. MSJ3, p.17:26-18:6. The evidence unequivocally refutes that argument. Villegas Dec. ¶¶19-22, 24-28; Reply Declaration of Kimberly Watson, ¶¶3-7; *see also* Pl. Ex. 33 (stating ███████████ ████████████████████████████████████████████████ In recycling her argument that █████████████████████ Plaintiff offers no rebuttal to ERC's refutation. This misnomer was used within ERC's software to distinguish ████████████████ like Plaintiff from categories of contacts like professionals. Villegas Dec., ¶27. As a matter of fact and law, under CMIA or otherwise, Plaintiff was never more than ██████████████.

### b.    Plaintiff's Medical Information Was Not Impacted

The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care ... regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(j). In order to qualify as medical information, the information must "be substantive, rather than merely administrative." *Gray v. Luxottica of Am., Inc.*, 8:24-CV-00160-MRA-DFM, 2024 WL 5689566, at *8 (C.D. Cal., Dec. 16, 2024) (citation omitted). Thus, information such as patient status, a treating physician's name, or appointment information is not medical information under the CMIA without other substantive information regarding the patient's medical condition,

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
-11-

history, or treatment. *See Tamraz v. Bakotic Pathology Assoc., LLC*, 22-CV-0725-BAS-WVG, 2022 WL 16985001, at *4 (S.D. Cal., Nov. 16, 2022) (citations omitted); *Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021).

The information at issue – URLs transmitted to Meta – is not medical information. Plaintiff alleges that she viewed ERC's public webpages with URLs relating to ███████████ ████████████████████████████████████████████████████████████████ [9]. MSJ3, at16:13-19. Fatally for Plaintiff's CMIA claim, none of these URLs contain any substantive information regarding Plaintiff's medical condition, history, or treatment. As for Plaintiff's assertion that ███████████████████████████████████████ (MSJ3, p.16:21-26), the data transmitted does not relate to Plaintiff's condition or treatment. The only ████████████████████████████████████████████████████████ Ex. 9, ¶30. Crucially, no ██████████████████████████████████ were transmitted; the data sent was "contextually vacant," and incapable of being considered substantive "medical information." MSJ2, pp.4:13-5:3.

Plaintiff would have this Court declare that anyone who views a public webpage ████ ███████████████████████████████████████████████████████████████. That absurd contention, however, is at odds with the Ninth Circuit's understanding of website browsing information. *Smith v. Facebook, Inc*., 745 Fed. Appx. 8, 9 (9th Cir. 2018) (affirming the dismissal of a complaint alleging that Facebook violated federal and state laws by collecting and using plaintiffs' browsing data from various healthcare-related websites). The *Smith* court held that "[i]nformation available on publicly accessible websites stands in stark contrast to ... personally identifiable patient records and medical histories ... information that unequivocally provides a window into an individual's personal medical history." The URLs at issue in *Smith* "pointed to pages containing information about treatment options for melanoma, information about a specific doctor, [and] search results related to the phrase 'intestine transplant.'" *See Smith v. Facebook, Inc*., 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017), aff'd, 745 Fed. App'x 8. As is the case here,

---

[9] Plaintiff did not provide ████████████ data transmitted to Meta. *See* MSJ2, at 3:4-4:6.
[10] These ██████████████████████████████, with PPC standing for pay-per-click. Watson Dec., ¶3. The URL for the PPC webpage does not contain the words "assessment" "form" or "quiz" and gives no indication regarding the content of the PPC webpage. Ex. 1.

the district court in *Smith* found "[n]othing about the URLs, or the content of the pages located at those URLs, relate[d] to the past, present, or future physical or mental health or condition" of any specific individual. *Id*. Similarly, despite the presence of search results in the URLS, the Ninth Circuit found that "the connection between a person's browsing history and his or her own state of health is too tenuous" for HIPAA to apply. *Id*.; *see also AHA v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024) (an "individual does not also transmit their subjective intent in using or searching for a webpage to the healthcare entity that owns the webpage").

Although the CMIA was not at issue in Smith, the definition of "'medical information' under the CMIA does not materially differ from the definition of IIHI under HIPAA." *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *13-14 (W.D. Wash., Nov. 14, 2024). Accordingly, URLs from a public website are not protected under the CMIA's definition of medical information either, and a fleet of cases prove this point[11].

Plaintiff's cited cases on this issue are easily distinguishable. All three were motions to dismiss, and the courts were required to accept the Plaintiff's allegations as true. In *St. Aubin v. Carbon Health Tech., Inc.*, the plaintiff alleged that she used the defendant's website to schedule multiple medical treatment appointments, and that Facebook "intercept[ed] information about the type of appointment the patient is booking along with the name of the clinic where the patient will have their appointment." 24-CV-00667-JST, 2024 WL 4369675, at *1-2 (N.D. Cal., Oct. 1,

---

[11] *See, e.g., Harrill v. Emanuel Med. Ctr.*, 2:23-CV-01672-DC-CKD, 2025 WL 1635428, at *8 (E.D. Cal., June 9, 2025) (dismissing CMIA claim where "Plaintiff alleges that she searched for information concerning health conditions and symptoms on the Website ... but does not plead facts sufficient to show that her searches revealed her personal "medical history, diagnosis, or care"); *Beltran v. Doctors Med. Ctr. of Modesto*, 2:23-CV-01670-DC-CKD, 2025 WL 1635467, at *5 (E.D. Cal., June 9, 2025) (The "disclosure of browsing activity on a publicly available website that does not relate to the past, present, or future physical or mental health or condition of an individual is not actionable ... Indeed, [a]n internet user might research medical information for reasons unrelated to the user's own health conditions.") (internal citations omitted); *Zarif v. Hwareh.com, Inc.*, 23-CV-0565-BAS-DEB, 2025 WL 486317, at *1, 14 (S.D. Cal., Feb. 13, 2025) (dismissing CMIA claim where plaintiff's "search terms and browsing history included medications concerning sleep troubles and anxiety for herself" because she did not "purchase[] any medications, input[] her medical history, or receive[] any health care services"); *Gray v. Luxottica of Am., Inc.*, 8:24-CV-00160-MRA-DFM, 2024 WL 5689566, at *2, 9 (C.D. Cal., Dec. 16, 2024) ("Plaintiff has not sufficiently alleged that the disclosed data [including URLs with the terms "eye-exam" and "reschedule"] constitutes substantive 'medical information'. . .").

2024). The court found such information fell under the CMIA's definition of "medical information." *Id*. at *9. Here, Plaintiff did not schedule any appointments with ERC, nor did she ever receive any medical treatment from ERC. *R.C. v. Sussex Publishers, LLC* involved a host of interactive website features not present here, including a "button and link for consumers to contact therapists directly" and "host[ed] teletherapy sessions." 2025 WL 948060, at *1. The website in that case allowed users to find therapists by "click[ing] various filters to narrow their search, specifying [their] mental health concerns ... and many other preferences." *Id*. All of this information, including plaintiffs' symptoms, and the type of care or treatment that the user specified that they needed, was allegedly transmitted to Google. *Id*., at *1-2. As a result, the court denied defendant's motion to dismiss, finding the plaintiffs had plausibly alleged they disclosed "medical information" under the CMIA. *Id*. at *5. Here, no evidence exists suggesting Plaintiff's condition, nor any symptom she suffered, nor any treatment she sought was disclosed through ERC's website to Meta. Lastly, in *Gaige v. Exer Holding Co., LLC*, unlike here, the plaintiff was "a patient of the defendant" and had allegedly disclosed his "protected health conditions," "medical treatments," and "specific search queries" through defendant's website to Facebook and Google. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719, at *1 (C.D. Cal., Mar. 2, 2025). Notably, the court found that the defendant "[did] not respond to [the p]laintiff's argument that specific medical information was disclosed." *See Gaige*, 2025 WL 559719, at *6. "As a result, the court [found] that [the p]laintiff ha[d] sufficiently alleged that the disclosure of information reveal[ed] 'medical history, ... mental or physical condition, or treatment.'" *Id*. Once again, in the case at hand, Plaintiff did not disclose any private information though ERC's website, and no search queries of Plaintiff's were sent to Meta.

### c.    Meta Did Not "Actually View" Medical Information

To state a cause of action under the CMIA, a plaintiff must establish that medical information was "actually viewed by an unauthorized person." *Sutter Health v. Superior Ct*., 227 Cal. App. 4th 1546, 1550 (2014).[12] Plaintiff concedes as she must that the ███████████

---

[12] Plaintiff conclusorily argues in a footnote that "Plaintiff need not prove that Meta viewed her medical information for her CMIA claim under § 56.10." MSJ3, at n.5. Plaintiff cites no authority

in the Plaintiff Data are the only "medical information" at issue. However, Plaintiff cannot cite any evidence suggesting that anyone at Meta actually viewed the Plaintiff Data. Thus, even if the ██████████████ could be considered medical information (which, as discussed above, they cannot), the record is "devoid of" any evidence of "actual viewing of Plaintiffs' medical information by unauthorized individuals." *See Barbour v. John Muir Health*, 2023 WL 2618967, *6-7 (Cal. Super. Ct., 2023) (dismissing CMIA cause of action in a Meta Pixel case because of lack of actual viewing). In *Barbour*, the court pointedly noted that "the information may be collected, analyzed, and used by a third party for its own benefit, all through the use of computers, without any human actually laying eyes on it" and therefore the plaintiff had not satisfied the "actual viewing" standard within the meaning of *Sutter Health*. *Id*. at *7.

### D.    Plaintiff's Unjust Enrichment Claim Fails

Plaintiff attempts to reverse her burden of proving she has a viable unjust enrichment claim by arguing "Defendant does not demonstrate the absence of material facts concerning Plaintiff's unjust enrichment claim." MSJ3, p.20:17-18. The fact that ERC moved for summary judgment on Plaintiff's unjust enrichment claim challenged Plaintiff's burden, and Plaintiff failed to proffer a single evidentiary reference in support of this claim.  That is because no evidence exists suggesting any benefit whatsoever was conferred on ERC through Plaintiff's information. No testimony, no documentation and no expert evidence was ever adduced on this claim, leaving Plaintiff with nothing to argue for, much less anything calculable, in terms of a restitution theory. Summary judgment on Plaintiff's unjust enrichment claim must be granted for ERC.

## IV.    CONCLUSION

For the foregoing reasons, ERC respectfully requests that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's Complaint with prejudice.

---

for this proposition and it is illogical. The CMIA protects the confidentiality of patients' medical information. *See Loder v. City of Glendale*, 14 Cal. 4th 846, 859 (1997). Whether premised on negligent release under § 56.101 the CMIA or on intentional disclosure under § 56.10, the confidentiality of medical information is not compromised in either case until it is actually viewed by an unauthorized individual. *See Barbour*, 2023 WL 2618967, *5, 7.

Dated: July 11, 2025                                              Respectfully submitted,

                                                                 **MULLEN COUGHLIN LLC**

                                                  By:    /s/ James F. Monagle
                                                         James F. Monagle

                                                         *Attorneys for Defendant*

                                                         *Eating Recovery Center LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 11, 2025, I electronically filed the foregoing DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT with the United States District Court for the Northern District of California by using the CM/ECF system, which will send a notice of filing to all registered users, including counsel for all parties.

DATED: July 11, 2025                                    Respectfully submitted,

By:    */s/ James F. Monagle*
       James F. Monagle