**MOGIN LAW LLP**
Daniel J. Mogin (SBN No.  95624)
Timothy Z. LaComb (SBN 314244)
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone:    (619) 687-6611
Facsimile:    (619) 687-6610
dmogin@moginlawllp.com
tlacomb@moginlawllp.com

**Don Bivens PLLC**
Don Bivens
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone:    (602) 708-1450
don@donbivens.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED INDIVIDUALS,<br><br>        Plaintiff,<br><br>        vs.<br><br>EATING RECOVERY CENTER LLC,<br><br>        Defendant. | Case No: 3:23-cv-05561-VC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e)**<br><br>Hearing: January 8, 2026<br>Time:10 a.m.<br>Courtroom: 4-17th Floor |

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e); CASE NO. 3:23-cv-05561-VC

## NOTICE OF MOTION

TO ALL PARTIES, THEIR COUNSEL AND THE CLERK OF THE COURT

PLEASE TAKE NOTICE THAT on Thursday, January 8, 2026 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 4 of the United States District Court for the Northern District of California, before the Honorable Vince Chhabria, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, CA 94102, Plaintiff Jane Doe ("Plaintiff") hereby moves this Court pursuant to Fed. R. Civ. 59(e) to alter or amend the Clerk's Judgment which is based on the Court's Order dated October 21, 2025.

Dated: November 18, 2025

/s/ Timothy Z. LaComb
Timothy Z. LaComb
Daniel J. Mogin
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone:     (619) 687-6611
Facsimile:     (619) 687-6610
dmogin@moginlawllp.com
tlacomb@moginlawllp.com

## I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 59(e), Plaintiff Jane Doe ("Plaintiff") brings this motion to amend the judgment entered on October 21, 2025, in favor of Defendant Eating Recover Center LLC ("ERC" or "Defendant") that dismissed her claims for violations of § 631 of the California Invasion of Privacy Act ("CIPA"); §§ 56.10 and 56.101 of California's Confidentiality of Medical Information Act ("CMIA"); and unjust enrichment.

The Court committed multiple clear errors of law when interpreting the second prong of § 631. Most notably, the Court erred by interpreting this section as requiring Meta to intercept and comprehend the meaning of Plaintiff's communications during the "virtually infinitesimal amount of time" the communications passed between Plaintiff and ERC. By interpreting § 631 in this manner, the Court precludes it from applying to all forms of electronic communications (past and present) because all transmit messages between parties in unreadable formats cannot be understood until received and processed by a device. This is both an absurd result and directly contrary to CIPA's legislative intent of broadly protecting private communications.

Concerning the CMIA claim, the Court committed clear error of fact by concluding Plaintiff's data was intercepted before her interactions with ERC that rendered her a patient. Rather, as the facts unambiguously demonstrate, most of Plaintiff's data (including medical information) was intercepted after her relevant interactions with ERC. As a result, ERC violated the CMIA when disclosing Plaintiff's medical information to Meta.

Concerning the unjust enrichment claim, the Court committed clear error by evaluating Plaintiff's evidence at all. To carry its burden at summary judgment, ERC had to identify which facts or elements of the claim lacked support. ERC utterly failed to do so, as it did not identify a single fact or element anywhere in its argument and instead raised two inapposite legal arguments. Because ERC failed to carry its initial burden, the burden never shifted to Plaintiff to present evidence to support her claim and the Court erred by finding otherwise.

Even absent clear error, the Court should amend the judgment to allow Plaintiff to move for leave to file an amended complaint to add a claim under § 632 of CIPA. As the Court acknowledged, amendment would not be futile because the record facts fit a § 632 claim.

1

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e); CASE NO. 3:23-cv-05561-VC

Plaintiff was not dilatory in seeking amendment because she had no reason to believe her § 631 claim was not viable prior to the grant of summary judgment, highlighted by the Court's Order re Supplemental Briefs that indicated her claim would succeed at summary judgment following oral argument. Defendant would, at most, be minimally prejudiced were leave granted, as Plaintiff will not need additional fact or expert discovery and would be willing to proceed to summary judgment immediately on this claim. And, by granting leave, the Court would promote the strong federal policy favoring amendment and deciding cases on their merits.

Finally, the Court should amend its judgment to give Plaintiff time to obtain newly discovered facts from recently filed documents that are currently under seal in a related action. These facts appear highly relevant to material issues in this case and also appear to contradict discovery responses by Meta concerning use of Pixel data.

## II.   ARGUMENT

Rule 59(e) does not identify grounds on which such motions can be granted, meaning district courts enjoy "considerable discretion" when deciding such motions. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Common grounds on which Rule 59(e) motions are granted include: (i) clear error of fact or law; (ii) new evidence or law; and (iii) prevention of manifest injustice. *Id*.

### A.   The Court Committed Clear Errors of Law Related to the CIPA Claim.

#### i.   The Court Committed Clear Error by Interpreting § 631 in a Way that Prevents it From Applying to All Electronic Communications.

When interpreting state law, federal courts must try to predict how the state's highest court would decide the issue. *Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1027 (9th Cir. 2019). Under California law, specific statutory provisions must be interpreted based on the overall statutory scheme and "to avoid anomalous or absurd results . . . that would frustrate the Legislature's intent." *Metro. Water Dist. v. Superior Court*, 32 Cal. 4th 491, 522, 9 Cal. Rptr. 3d 857, 880, 84 P.3d 966, 985-86 (2004). They must also be interpreted in a manner that allows them to apply to new technology, particularly where it advances the legislature's intent. *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1072 (9th Cir. 2020).

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e); CASE NO. 3:23-cv-05561-VC

The California legislature set out the purpose of CIPA in the "Declaration of Policy," which states:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.
>
> The Legislature by this chapter intends to protect the right of privacy of the people of this state.

Cal. Penal Code § 630. Based on this, courts have made clear that CIPA should apply to new technologies, including internet communications. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) (recognizing CIPA was "intended to cover newer forms of technology."); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, at *79 (N.D. Cal. Sep. 26, 2013) (interpreting § 631 broadly due "Declaration of Policy" in § 630).

Here, the Court interpreted § 631 in a manner that produced an absurd result. Specifically, the Court determined Plaintiff's communications were "in transit" only during the milliseconds that they passed between Plaintiff's browser and ERC and that, during this window, Meta had to intercept and attempt to comprehend the meaning of the communications. *Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 LX 483181, at *12 (N.D. Cal. Oct. 17, 2025). If Meta did so milliseconds after ERC received the messages, then Meta did not violate § 631 because the necessary actions did not occur while the messages were in transit. *Id.*

By interpreting § 631 in this manner, the Court prevents the statute from applying to *all forms of electronic communications* because all transmit messages in an incomprehensible form that cannot be understood until received, de-coded, and processed by a device. For example, when CIPA was enacted, landline telephones transmitted voices as incomprehensible electric current or electromagnetic waves that could not be understood until received and converted into sound waves by the recipient's phone and processed by the recipient's brain.[1] Likewise, as the

---

[1] Borth, David E. "telephone". Encyclopedia Britannica, 9 Oct. 2025, https://www.britannica.com/technology/telephone. Accessed 18 November 2025.

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e); CASE NO. 3:23-cv-05561-VC

Court noted, modern computers, cell phones and land lines transmit communications via incomprehensible data packets that cannot be understood until received, de-coded, and processed by the recipient's device. *Eating Recovery Ctr*., 2025 LX 483181, at \*17. Since none of these forms of communication permit comprehension of messages while passing between parties, § 631 would not apply to them under the Court's interpretation.

The Court's interpretation also contradicts the explicit legislative intent underlying CIPA. As shown above, CIPA was enacted to protect California citizens from the use of new technology by unknown parties to intercept private communications. Cal. Penal Code § 630. Here, ERC used a new technology (the Pixel) to allow an unknown party (Meta) to intercept Plaintiff's private communications – the exact conduct CIPA was intended to protect against. Even so, the Court interpreted § 631 narrowly so that it did not apply to these facts.

Rather than using an interpretation that produces an absurd result and contradicts statutory intent, the Court should follow the majority of courts and interpret "in transit" as the period between transmission and digital storage.[2] Not only is this a rational interpretation given that the data remains transitory until stored, but it also creates a logical line of demarcation between parties like Meta that read and/or learn the content of communications for their own use (which implicates privacy concerns of CIPA) and parties that merely collect and store the communications. And, finally, because this interpretation still requires near immediate reading or learning of the content given the speed at which data reaches digital storage, it still creates a framework that limits the overlap between conduct that would violate § 631 and § 632.

> **ii. The Court Committed Clear Error of Law by Applying the Rule of Lenity to § 631 in a Manner that Undercuts the Legislative Intent.**

---

[2] *Jane Doe v. Call-On Doc.*, No. 24CV2095-GPC(KSC), 2025 WL 1677632, at \*12 (S.D. Cal. June 13, 2025) (to satisfy the "in transit" requirement, communications "must be acquired during transmission, not while ... in electronic storage."); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2024) (same); *Pena v. Gamestop, Inc.*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023) (same and explaining CIPA's "in transit" language has the same effect as the equivalent language in the Federal Wiretap Act).

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e); CASE NO. 3:23-cv-05561-VC

The rule of lenity is a "tool of last resort" that applies only when all other canons of statutory interpretation fail. *People v. Reyes*, 56 Cal. App. 5th 972, 989, 271 Cal. Rptr. 3d 68, 82 (2020). It, therefore, "has no application where . . . a court can fairly discern a contrary legislative intent." *People v. Cornett*, 53 Cal. 4th 1261, 1271, 139 Cal. Rptr. 3d 837, 844-45, 274 P.3d 456, 462 (2012). Likewise, it cannot be used to produce "an absurd result." *People v. Arias*, 240 Cal. App. 4th 161, 169 n.7, 192 Cal. Rptr. 3d 432, 438 (2015).

Notably, the California Supreme Court and courts in this district refuse to apply the rule of lenity to CIPA claims because doing so contradicts the legislative intent. *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 276 Cal. Rptr. 3d 746, 483 P.3d 869 (2021) (adopting broader interpretation of § 632.7 and refusing to apply rule of lenity because "legislative history, the purpose of the statute, general public policy concerns, and logic" favored the broader interpretation); *Deivaprakash v. Condé Nast*, 2025 WL 2541952 (N.D. Cal. 2025) (rejecting application of the rule of lenity because California Supreme Court instructs courts to interpret CIPA consistent with legislative purpose of giving greater protection to privacy interests).

Here, the Court committed clear error by applying the rule of lenity to support its interpretation of § 631. As explained above, the Court's interpretation produces an absurd result and is contrary to CIPA's legislative intent. Since California law is clear that the rule of lenity cannot be used to interpret a statute in a manner that produces either of these results, it has no application here. *Cornett*, 53 Cal. 4th at 1271; *Arias*, 240 Cal. App. 4th at 169 n.7.

Following its application of the rule of lenity, the Court questioned whether the California legislature intended to "subject companies like ERC to criminal liability for using third-party software to track website activity" or "criminalize the use of web traffic data." *Eating Recovery Ctr.*, 2025 LX 483181, at *18-19. But these questions miss the point. ERC is not subject to liability *because* it used third-party software to track website activity and web traffic data. It could have done these things legally (as countless companies do) by, among other things, obtaining user consent, anonymizing user data, or limiting interception to non-communications. Rather, ERC is subject to liability because it chose to install the Pixel to enable Meta to intercept Plaintiff's identifiable communications without consent and despite

5

promising to keep the communications "100% confidential." When a company uses third-party software in this manner (particularly a healthcare provider treating a stigmatized disorder), the California legislature intended to subject the company to liability under CIPA because it is using new technology to enable a third party to secretly eavesdrop on private communications – the precise invasion of privacy that CIPA protects against. Cal. Penal Code § 630.

### iii.    The Court Committed Clear Error by Interpreting § 631 in a Manner that Renders Provisions Meaningless.

Courts interpret statutes to "giv[e] effect to each word and mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Shulman v. Kaplan*, 58 F.4th 404, 410-11 (9th Cir. 2023). Where a statute connects words with "or," each must "be given separate meanings." *Mosteiro v. Simmons*, No. 22-16780, 2023 U.S. App. LEXIS 23509, at *7 (9th Cir. Sep. 5, 2023).

To violate the second prong of § 631, a party must "read[], or attempt[] to read, or to learn . . . the contents *or* meaning" of a communication while in transit. Cal. Penal Code § 631 (emphasis added). By including the disjunctive "or" between "contents" and "meaning," the legislature clearly intended the statute to apply where a party reads the contents of communications in transit, regardless of whether it also understood their meaning. The Court ignored this distinction, holding that Meta was required to at least attempt to understand the meaning of Plaintiff's communications while in transit. *Eating Recovery Ctr.*, 2025 LX 483181, at *12. This was clear error because it rendered the term "contents" meaningless.

The Court's error was significant because Plaintiff presented evidence that proved Meta at least read the contents of her communications, including when: (i) applying its filtering process, which must read the communications in some manner to determine which content to exclude;[3] and (ii) categorizing Plaintiff's data into more than twenty categories within milliseconds of interception and before storing the data. ECF 108 at 10, 12; ECF 108-3 at

---

[3] The Court analogizes Meta's filtering process to sorting mail. But, given that Meta reviews the entirety of the data to determine which should be filtered, a more apt analogy would be a person that opens and reviews the mail to determine which pieces should be brought inside.

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e); CASE NO. 3:23-cv-05561-VC

Columns H, K; ECF 108-13 at 157:7-23; ECF 86-17 at 76:6-77:17 (explaining that Meta analyzes the data to determine whether to remove any parameters before it is logged).

**B.    The Court Committed Clear Error of Fact Relating to the CIPA Claim.**

The Court committed clear error of fact when concluding that "the parties agree that the event data is transmitted to Meta about 0.2 seconds after the visitor's action is transmitted to the website." *Eating Recovery Ctr.*, 2025 LX 483181, at *12. In truth, neither party made this claim. Rather, as Plaintiff explained, the "0.2 seconds" figure represents the time between an action by a user that triggers the Pixel (e.g., clicking a link) and transmission of the data to Meta. ECF 86 at 14. The figure has nothing to do with the timing of transmissions to ERC and does not indicate data is sent to or received by ERC first, as transmissions to ERC face similar lag time between action and transmission due to the multi-step process for data transmission.

The Court's error was significant. Because the Court interpreted § 631 as requiring Meta to read Plaintiff's communications before they reached ERC, by incorrectly concluding the communications were sent to ERC before Meta, the Court incorrectly concluded that Meta necessarily could not read them while in transit. *Eating Recovery Ctr.*, 2025 LX 483181, at *12.

More fundamentally, the Courts' factual error and fixation on which party received the data first highlights another irrational consequence stemming from its interpretation of § 631: by requiring the intercepting party to comprehend the transmission before it reaches the intended recipient, the Court precludes § 631 from applying to otherwise unlawful actions simply because an intercepted communication travels farther or on a slower or busier network than the original communication, as these factors cause the intercepted communication to arrive at the intercepting party after the original communication arrives at the intended recipient. And, again, if the Court were to follow the majority of courts and interpret "in transit" as the time between transmission and digital storage, then this absurd outcome would be avoided.

**C.    The Court Committed Clear Error of Fact Relating to the CMIA Claim.**

When dismissing Plaintiff's CMIA claim, the Court determined "the data related to Doe's browsing of the ERC website . . . would have been directed to Meta before [her intake] call" and, therefore, Plaintiff was not a patient of ERC "at the relevant time" and ERC's classification of Plaintiff as a patient with an eating disorder it treats occurred "after the data at

7

issue was shared." ECF 168 at 2. But this was clear error of fact because most of the interceptions of Plaintiff's data occurred *after* she had her intake call, *after* ERC categorized Plaintiff as a patient, and *after* Plaintiff's other relevant interactions with ERC. *See* ECF 108-3 at Column G (33 of 57 interceptions occurred in 2023 or later).

It is undisputed that, during June and July 2022, Plaintiff had a 30-minute intake call with ERC's admissions team to determine whether she suffered from a condition that ERC treats (ECF 100 at ¶24); had a patient file opened by ERC, in which she was identified as a patient by ERC (ECF 86-36, 86-37); and was identified as having an eating disorder requiring specific treatment by ERC. ECF 86-34. In fact, by this time, Plaintiff had taken 4 of the 6 steps in ERC's "Patient Journey," which spans initial contact through discharge. ECF 149-4.

*After* these actions, Plaintiff repeatedly had her medical information intercepted by the Pixel while she used ERC's website to investigate potential treatment options. ECF 108-3, 4. In fact, 33 of the 57 interceptions that occurred took place in 2023 – several months after her relevant interactions with ERC staff that rendered her a patient. *Id.* And, as the Court previously recognized, much of the data intercepted by Meta included Plaintiff's medical information, including information concerning her condition and treatment. ECF 108-3 at Columns L, Q, T.

Due to its error of fact, the Court did not address whether Plaintiff was a patient of ERC. However, given Plaintiff's (i) repeated interactions with ERC, (ii) use of ERC's website to investigate treatment options, take diagnostic quizzes, and fill out self-assessment forms, and (iii) ERC's own statements that identify Plaintiff as a patient, diagnose her specific disorder, and identify proposed treatment, it is at minimum a question of fact for the jury as to whether Plaintiff was a patient of ERC. This is particularly true given that the CMIA is a remedial statute that must be interpreted broadly to effectuate its purpose of protecting medical information. *Pettus v. Cole*, 49 Cal. App. 4th 402, 429 (1996) (finding plaintiff to be a patient under broad interpretation of CMIA based on one work-ordered visit to healthcare professional despite no traditional patient-physician relationship and no other interactions).

### C.    The Court Committed Clear Error of Law Regarding the Unjust Enrichment Claim.

To succeed on summary judgment, a moving party without the burden at trial must demonstrate "the absence of evidence to support the non-moving party's case." *Robinson v.*

8

*G.D. Searle & Co.*, 286 F. Supp. 2d 1216, 1220 (N.D. Cal. 2003). Only after this burden is satisfied does it shift to the non-moving party to present evidence to support its claim. *Id.*

Here, ERC did not demonstrate the absence of evidence for Plaintiff's unjust enrichment claim. ECF 100 at 25. In fact, ERC did not identify a single material fact or element of an unjust enrichment claim. *Id.* Rather, ERC presented two incorrect legal arguments: (i) unjust enrichment is not a standalone claim, and (ii) Plaintiff must demonstrate Defendant acted unlawfully to bring an unjust enrichment claim. *Id.* Not only are these arguments incorrect (which Plaintiff addressed), but they do not identify the absence of evidence to support any part of Plaintiff's claim. Given this, ERC did not carry its burden on summary judgment and the burden never shifted to Plaintiff to present evidence supporting its claim. The Court, therefore, committed clear error by granting summary judgment for Defendant on this claim.

### D.  The Court Should Exercise its Discretion Under Rule 59(e) to Allow Plaintiff to Amend Her Complaint.

The Court should exercise its broad discretion under Rule 59(e) to allow Plaintiff to file a motion for leave to file an amended complaint to bring a claim under § 632 of CIPA. *Bourg v. Oracle Health Gov't Servs.*, No. 2:23-CV-00348-SAB, 2024 U.S. Dist. LEXIS 128019 (E.D. Wash. July 19, 2024) (amending judgment under 59(e) to allow plaintiff to amend complaint).

All relevant factors indicate Plaintiff should be allowed to amend her complaint. Plaintiff was not dilatory by not seeking amendment sooner. Prior to granting summary judgment, the Court did not indicate Plaintiff's CIPA claim was deficient. In fact, after oral argument on the summary judgment motions, the Court indicated Plaintiff's § 631 claim would *succeed* on summary judgment. *See* ECF 145 (Order re Supplemental Briefs). Moreover, the Court granted summary judgment based on a novel interpretation of § 631, as even the primary case on which it relied indicated the Meta Pixel satisfied the in transit requirement of § 631. *See Torres v. Prudential Fin., Inc.*, No. 22-cv-07465 (CRB), 2025 LX 184282, at *17, n.5 (N.D. Cal. Apr. 17, 2025) (explaining the Pixel satisfied the in transit requirement).

Amendment would not be futile because, as the Court recognized, Plaintiff can plead (and prove) a claim under § 632. A party violates § 632 when it: (i) intentionally and (ii) without consent of all parties (iii) uses an electronic amplifying or recording device (iv) to eavesdrop on or record a confidential communication. Cal. Penal Code § 632. The facts

9

demonstrate ERC and Meta intentionally used the Pixel to record Plaintiff's communications. ECF 108-2, 3. ERC and Meta did so without Plaintiff's consent. ECF 86-15 at 201:17-24. And the recorded conversations were confidential. ECF 108-2, 3.

Defendant will face minimal prejudice, at most, if amendment is permitted. As demonstrated above, Plaintiff can prove a § 632 claim based on existing record facts and, as a result, is unlikely to seek additional fact or expert discovery. Given this, the claim can immediately progress to summary judgment unless ERC chooses to file a Rule 12(b) motion.

Finally, by allowing amendment, the Court would advance the strong federal policy of liberally permitting amendment to ensure cases are decided on their merits. *Martinez v. Newport Beach*, 125 F.3d 777, 785 (9th Cir. 1997). This is particularly true where, as here, Plaintiff can almost certainly plead a viable claim if given the opportunity to do so. *Id.*

E.    **The Court Should Exercise its Discretion to Delay Judgment to Enable Plaintiff to Obtain New Relevant Facts.**

On October 29, 2025, Plaintiff filed a Motion to Unseal in *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-3580-WHO. Based on review of recently filed redacted versions of motions and documents in that case, Plaintiff believes the sealed documents contain new and material facts concerning, among other things: (i) the timing of transmissions from the Pixel, (ii) how and when Pixel data is used, and (iii) the functionality of the Meta filter.

Plaintiff also believes the sealed documents contain facts that potentially contradict discovery responses provided by Meta in this action. For example, the public version of the Motion for Class Certification indicates that Meta both reads and sorts data while in transit into categories and "structured 'features'" for individual users. ECF 1176-2 at 3-4. If true, these facts and the supporting documents would contradict discovery responses provided by Meta in which it stated it did not use Pixel data in this manner.

III.   **CONCLUSION**

For the reasons stated above, Plaintiff requests that the Court amend the judgment entered on October 21, 2025, deny ERC's motion for summary judgment, and permit this case to proceed on all claims.

10

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e); CASE NO. 3:23-cv-05561-VC

DATED: November 18, 2025

MOGIN LAW LLP


*/s/ Timothy Z. LaComb*
Timothy Z. LaComb
Daniel J. Mogin
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone:     (619) 687-6611
Facsimile:     (619) 687-6610
dmogin@moginlawllp.com
tlacomb@moginlawllp.com


**Don Bivens PLLC**
Don Bivens
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone:     (602) 708-1450
*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiffs*

11

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e); CASE NO. 3:23-cv-05561-VC

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 18, 2025, I electronically filed the foregoing PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P. 59(e) with the United States District Court for the Northern District of California by using the CM/ECF system, which will send a notice of filing to all registered users, including counsel for all parties.

MOGIN LAW LLP

/s/ Timothy Z. LaComb
Timothy Z. LaComb
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone:     (619) 687-6611
Facsimile:     (619) 687-6610

12

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FED. R. CIV. P.
59(e); CASE NO. 3:23-cv-05561-VC